**In re Marriage of William W. POND, Petitioner (Appellant below)**

v.

**Brenda A. POND, Respondent (Appellee below).**

No. 02S03–9707–CV–418.

Supreme Court of Indiana.

Oct. 26, 1998.

Brian J. T'Kindt, Robert L. Nicholson, Beckman, Lawson, Sandler, Snyder & Federoff, L.L.F., Fort Wayne, for appellant.

Paul B. McNellis, Linda Peters Chrzan, Wyss, McNellis, Riebenack & Myers, Fort Wayne, for appellee.

DICKSON, Justice.

Following the dissolution of the marriage of petitioner-appellant, William W. Pond ("husband"), and respondent-appellee, Brenda A. Pond ("wife"), the husband appealed, raising issues concerning construction of the agreement between the spouses, spousal maintenance, and child support. The Court of Appeals affirmed in part and reversed in part. *In re Marriage of Pond,* 676 N.E.2d 401 (Ind.Ct.App.1997). Seeking transfer, the

husband contends that the trial court erred in construing and applying the parties' settlement agreement, which the parties entered into during their marriage after the husband had filed for legal separation but before the wife filed her petition for dissolution of marriage.[1] The trial court selectively incorporated most, but not all, of the terms of the parties' agreement in the dissolution decree.

The husband argues that the parties' agreement is a reconciliation agreement and should be strictly enforced in the same manner as an antenuptial agreement. The wife counters that the agreement should instead be construed as a dissolution settlement agreement subject to partial enforcement or modification under Indiana Code § 31–1–11.5–10.[2] The husband also contends that, even if the statute is applicable, the trial court erred in refusing to enforce one provision of the agreement, finding it unconsciona-

ble. We granted transfer to address these issues.

### Dissolution Settlement or Reconciliation Agreement

■ As a general rule, valid agreements entered into in contemplation of marriage (often referred to as prenuptial, premarital, or antenuptial agreements) must be enforced as written,[3] but the approval of settlement agreements entered into as a consequence of dissolution proceedings (post-nuptial agreements) is governed by the Indiana Dissolution of Marriage Act and is subject to the trial court's discretion. *Meehan v. Meehan*, 425 N.E.2d 157, 159 (Ind.1981); *Flansburg v. Flansburg*, 581 N.E.2d 430, 433 (Ind.Ct.App. 1991).[4] The Act provides that the parties to a marriage may agree in writing to settle existing or potential disputes attendant upon the dissolution of their marriage. IND.CODE § 31–1–11.5–10 (1988).[5] In *Meehan*, we em-

---

1. In addition to the enforceability of the agreement, the husband's transfer petition and supporting brief challenges the decision of the Court of Appeals regarding the issue of child support, an issue not addressed in the parties' agreement. Pursuant to Indiana Appellate Rule 11(B)(3), we summarily affirm as to the child support issue.

2. This opinion cites the Code as of the time of the dissolution decree. We note that the Indiana Dissolution of Marriage Act was recently recodified and modified in form. *See* IND.CODE § 31–15–2–1 *et seq.* (1997). For the reader's convenience, we have also provided the citation as recodified.

3. However, an otherwise valid antenuptial agreement may become voidable as unconscionable due to circumstances existing at the time of the dissolution. *See Rider v. Rider*, 669 N.E.2d 160, 162–64 (Ind.1996).

4. We observe that dicta in *Marriage of Boren*, 475 N.E.2d 690, 695 (Ind.1985), *Meehan*, 425 N.E.2d at 159, and *Flansburg*, 581 N.E.2d at 433, recites that a trial judge has the discretion not only to accept or reject but also to modify dissolution settlement agreements. In *Meehan*, this Court wrote that it is "well-settled" that a trial court may "accept, modify, or reject in whole or part a settlement agreement." 425 N.E.2d at 159. However, we note that none of the cases cited in *Meehan* support this proposition.

5. With respect to settlement agreements, the Act provides:

Sec. 10. Agreements. (a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage

attendant upon the dissolution of their marriage, the parties may agree in writing to provisions for the maintenance of either of them, the disposition of any property owned by either or both of them and the custody and support of their children.

(b) In an action for dissolution of the marriage the terms of the agreement if approved by the court shall be incorporated and merged into the decree and the parties ordered to perform them, or the court may make provisions for disposition of property, child support, maintenance, and custody as provided in this chapter.

(c) The disposition of property settled by such an agreement and incorporated and merged into the decree shall not be subject to subsequent modification by the court except as the agreement itself may prescribe or the parties may subsequently consent.

IND.CODE § 31–1–11.5–10 (1988). The recodified version of this section is substantively the same, but modified in its form:

Agreements.—(a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, the parties may agree in writing to provisions for:

(1) the maintenance of either of the parties;
(2) the disposition of any property owned by either or both of the parties; and
(3) the custody and support of the children of the parties.

(b) In an action for dissolution of marriage:
(1) the terms of the agreement, if approved by the court, shall be incorporated and merged into the decree and the parties shall be ordered to perform the terms; or
(2) the court may make provisions for:
(A) the disposition of property;

phasized that the "trial court, when presented with a [dissolution] settlement agreement for its consideration, should carefully delineate in express and unequivocal terms those portions which it is incorporating and merging into its order." 425 N.E.2d at 159.

The husband contends that the parties' agreement, although entered into by the parties during their marriage, was an agreement to foster reconciliation and should be construed as an antenuptial agreement for the reason that no petition for dissolution had been filed when the agreement was signed. Although this Court has never directly addressed the question, the Court of Appeals has done so. In *Flansburg*, the parties attempted reconciliation after the wife filed a petition for dissolution. 581 N.E.2d 430. The parties then signed a post-nuptial agreement, and she dismissed the petition. The marriage continued for three more years, and she again filed a petition for dissolution. Finding the "reconciliation" agreement to be something of a hybrid between an antenuptial agreement and a dissolution settlement agreement, the Court of Appeals noted:

> While the property settlement labeled a "Post Nuptial Agreement" was negotiated by the parties well into their marriage, it primarily concerned the distribution of property interests acquired prior to the marriage. Just as marriage is, in and of itself, valued and respected by the law as adequate consideration to support an antenuptial agreement, *the extension of a marriage that would have otherwise been dissolved but for the execution of an agreement to reconcile has been deemed adequate consideration.*

*Id.* at 433–34 (citations omitted) (emphasis added). The Court of Appeals upheld the trial court's findings of fact regarding consideration, including its finding that the dissolution action was dismissed after the signing of the agreement, and concluded that there was "no reason to treat [a] reconciliation agreement any differently than an antenuptial agreement." *Id.* at 434.

In the present case, the husband asserts that, as a reconciliation agreement, the parties' agreement should be treated as an antenuptial agreement, and thus should not be subject to section 10 of the Dissolution of Marriage Act, under which a court may reject individual terms of an agreement. The trial court made no findings regarding this issue, but rather referred to the agreement as a "post nuptial agreement," which was consistent with the denomination utilized by the parties. Construction of this agreement, an issue of law, necessarily requires a review of the facts underlying its formation.

The parties were married on June 23, 1979. Two children were born of the marriage. The parties began experiencing marital difficulties in the spring of 1992. In February of 1993, while on a family vacation, the husband gave the wife the first draft of the agreement at issue in the present case. This initial draft was not signed, and negotiations ensued. On March 31, 1993, the husband filed his Petition for Legal Separation ("separation petition").[6]

Negotiations regarding the terms of the agreement continued after the filing of the separation petition. According to the husband's testimony, the wife had expressed reluctance about signing any type of agreement. Record at 926. The parties dismissed their attorneys by two identical letters dated August 4, 1993. In these letters, the parties acknowledged that both attorneys had advised them not to sign the agreement. Rec-

---

(B) child support;
(C) maintenance; and
(D) custody;
as provided in this title.
(c) The disposition of property settled by an agreement described in subsection (a) and incorporated and merged into the decree is not subject to subsequent modification by the court, except as the agreement prescribes or the parties subsequently consent.
IND.CODE § 31–15–2–17 (1997).

**6.** The provision in force at the time entitled "Causes of Action" sets forth three distinct causes in the same section: dissolution, child support, and legal separation. IND CODE § 31–1–11.5–3. The recodification separates the three causes, establishing the dissolution action at Indiana Code section 31–15–2–2 and the action for legal separation at Indiana Code section 31–15–3–2. Actions involving child and dependant support have been moved to Article 16 of Chapter 31.

ord at 929. On August 14, 1993, the parties signed the agreement.

Although referring to counseling, the focus of the agreement is the division of property. The ten page agreement begins by reciting that the parties were married at the time of signing, that the husband had filed a Petition for Legal Separation, that the husband would attend a minimum of twenty-six individual or joint counseling sessions, and that the parties "are in the process of making a full and complete disclosure of all of their assets and liabilities, whether owned individually or jointly with others." Record at 808. Further, the agreement provides that the husband's failure to attend all twenty-six sessions of counseling would void the agreement. The agreement did not specify the purpose of the counseling sessions. The duration of the agreement was expressly limited to two years from March 31, 1993, the date the husband filed the separation petition. Record at 809.

The remainder of the agreement details the division of marital property in the event of dissolution. The parties relinquish claims for temporary or permanent spousal support and all statutory inheritance rights. The agreement includes a clause purporting to allocate certain attorney fees and contains a severability clause that declares the remainder of the agreement to be enforceable if any portion is adjudged to be invalid, unlawful, or void. No terms address any issues related to the children except for support during the period prior to any dissolution.

In accordance with the agreement's terms, the parties immediately began to divide and distribute the marital property between themselves.[7] Among other distributions, the wife received a cash payment for the value of life insurance policies. Record at 355. The husband's attorney began to prepare a qualified domestic relations order,[8] which was intended to divide the husband's pension and retirement benefits effective on the date of the filing of the separation petition. Record at 355. The wife thereafter filed her petition for dissolution on November 15, 1993. The trial court eventually approved the parties' agreement and ordered the parties to perform its terms except for Paragraph 25, which it held to be unconscionable. The Court of Appeals affirmed this determination, without addressing whether it was a reconciliation agreement, but reversed and remanded on other grounds. *Marriage of Pond*, 676 N.E.2d at 408–409, 412–13.

Additionally, nothing in the record indicates that the signing of this agreement altered the apparent intention to dismantle this marital relationship. After reaching this agreement, the husband did not dismiss the separation action. Record at 948. Further, in closing argument filed in writing to the court, the husband stated:

> The facts most clearly provided in this case establish that the marriage of the parties was deteriorating. In furtherance of avoiding the substantial costs and emotional damage which would result as part of a dissolution action, Bill Pond proposed to reach an agreement with his wife which would provide the best agreement for both parties.

Record at 408–09. Finally, shortly after signing the agreement and in accordance with its terms, the parties began distributing property "awarded to each of them pursuant to division" as set forth in the agreement. Record at 814. The agreement required

---

7. Paragraph 14 of the agreement (as amended by hand and initialed by the parties) provides:
   Within ten (10) days following execution of this agreement the parties shall take whatever steps necessary to execute all documents to transfer to their individual names those assets awarded to each of them pursuant to division as set forth in paragraph 13 preceding and William will pay to Brenda the $10,248.00—Northwestern Mutual Life policy amount.
   Record at 814–15.

8. A qualified domestic relations order ("QDRO") is a judgment, decree, or order which relates to the provision of child support, alimony, or marital property rights for a spouse, former spouse, or dependant of a participant and creates a right in this person to receive all or a portion of the benefits payable to the pension participant. I.R.C. § 414(p) (1993). A QDRO is authorized under the Retirement Equity Act of 1984. The Retirement Equity Act of 1984, P.L. 98–397, 98 Stat. 1433 (1984), amended the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.*, to authorize state courts to order the distribution of pension benefits in divorce actions pursuant to a QDRO.

them to do this within ten days of signing. The agreement was essentially designed to divide the assets in anticipation of dissolution. The provision requiring counseling does not require that these sessions be addressed toward resolving the marital difficulties, nor does the agreement provide any indication that reconciliation would constitute any part of the consideration for the agreement.[9]

■ We find that the parties' agreement is not a reconciliation agreement and should not be treated as an antenuptial agreement as in *Flansburg*. To the contrary, the agreement clearly falls within the ambit of section 10 of the Dissolution of Marriage Act. This agreement was formed between the parties to a marriage, and its substance was directed at the amicable settlement of "disputes that have arisen or may arise . . . attendant upon the dissolution of their marriage." IND.CODE § 31–1–11.5–10. The agreement was signed after the husband had commenced proceedings pursuant to the Act. The trial court did not err in construing the parties' agreement in accordance with the Act.

The husband also contends that, because the trial court had expressly approved the full agreement in an earlier ruling, it lacked jurisdiction to reconsider and modify its initial determination. After the wife filed her petition for dissolution, the husband filed a petition for declaratory judgment on April 15, 1994, seeking to establish that the agreement was valid and enforceable. Following the receipt of evidence and testimony, the trial court entered "Findings of Fact, Conclusions of Law and Decree" which concluded:

17. Accordingly, the terms of the post nuptial agreement and the agreement itself is deemed valid for all intents and purposes. The substantial steps already taken by the parties in furtherance of the agreement shall be completed forthwith by the parties.

18. The parties are thereby ordered to specifically perform under the agreement.

19. The Court retains jurisdiction of this matter for purposes of any supplemental and additional orders necessary in the performance of the agreement of the parties.

SO ORDERED this 13 day of January, 1995.

Record at 365. Within ten days thereafter, the wife filed a motion to reconsider which the trial court took under advisement and ultimately adjudicated in its decree of dissolution entered September 8, 1995. Granting the motion to reconsider, the court found Paragraph 25 of the agreement to be unconscionable. Record at 243.

The husband contends that the trial court's earlier determination on the petition for declaratory judgment was a final and appealable order, and, because the wife did not timely appeal that initial finding, the trial court lost jurisdiction to reconsider its initial determination. The wife contends that the trial court retained inherent power to reconsider its ruling because it was an incomplete ruling until the final decree was entered.

■ Declaratory judgments are reviewable in the same manner as other orders, judgments, or decrees. IND.CODE § 34–4–10–7. A trial court may reconsider an order or ruling if the action remains *in fieri*, or pending resolution. *Biggs v. Marsh*, 446 N.E.2d 977, 981 (Ind.Ct.App.1983). Here, the relevant action was the dissolution proceeding, under which the husband filed his petition for declaratory judgment. Because the dissolution action was pending until the trial court's final decree, the trial court had the power to reconsider its original order on the petition for declaratory judgment. We find no error in the trial court's exercise of jurisdiction to reconsider its ruling.

### Enforceability of Provision Shifting Attorney Fees

In its decree of dissolution, the trial court approved the parties' agreement with the exception of Paragraph 25, which provides:

In the event an attack by one party as to the validity of this agreement is unsuccessful, the party initiating such action shall be

---

9. We note that the agreement in *Flansburg* contained an acknowledgment that the wife (who had filed for the dissolution) was seeking reconciliation and decided to enter into the agreement with that in mind. 581 N.E.2d at 432 n. 2.

responsible for all attorney's fees and costs incurred by both parties in the prosecution or defense of such action.

Record at 817. After rejecting Paragraph 25, the trial court ordered the husband to pay a substantial portion of the wife's attorney fees.[10] The husband argues that general principles of contract law require enforcement of Paragraph 25 "unless the contract is contrary to law or public policy." Brief of Appellant at 29.

■ Dissolution settlement agreements are encouraged under the Indiana Dissolution of Marriage Act. IND.CODE § 31–1–11.5–10(a); *Voigt v. Voigt,* 670 N.E.2d 1271, 1277 (Ind.1996). Parties are expressly authorized to "agree in writing to provisions for the maintenance of either of them, the disposition of any property owned by either or both of them and the custody and support of their children." *Voigt,* 670 N.E.2d at 1277 (quoting IND.CODE § 31–1–11.5–10(a)). While this provision does not make express reference to the allocation of attorney fees, we decline to construe narrowly the statutory language to exclude attorney fees from among those matters that may be resolved by settlement agreement. We recently emphasized that parties drafting dissolution settlement agreements are free to make such continuing financial arrangements as they wish. *Voigt,* 670 N.E.2d at 1277. As a general rule, a contract for attorney fees is enforceable according to its terms unless contrary to law or public policy. *Hacienda Mexican Restaurant of Kalamazoo Corp. v. Hacienda Franchise Group, Inc.,* 641 N.E.2d 1036, 1042 (Ind.Ct.App.1994).

■ It is well established that the public policy of this state generally favors the freedom of contract between private parties. There is a "very strong presumption of enforceability of contracts that represent the freely bargained agreement of the parties." *Continental Basketball Ass'n, Inc. v. Ellen-* *stein Enter., Inc.,* 669 N.E.2d 134, 139 (Ind. 1996). Indiana courts have "not hesitated to enforce a divorce settlement agreement which would have been in excess of the divorce court's authority had it been crafted by the divorce court and which was shown to be, over time, grossly inequitable." *Bowman v. Bowman,* 567 N.E.2d 828, 831 (Ind.Ct.App. 1991) (citing *Smith v. Smith,* 547 N.E.2d 297 (Ind.Ct.App.1989)).

■ However, a court is not bound to accept every proffered settlement. *Voigt,* 670 N.E.2d at 1277. "In reviewing a settlement agreement, a court should concern itself only with fraud, duress, and other imperfections of consent, or with manifest inequities, particularly those deriving from great disparities in bargaining power." *Id.* at 1278. However, "the power to disapprove a settlement agreement must be exercised with great restraint. A trial judge should not reject such agreements just because she believes she could draft a better one." *Id.* at 1277.

In the present case, the trial court did not find the agreement to have been entered as a result of fraud, duress, or misrepresentation. Rather, the court found the agreement valid, Record at 365, and expressly found that "[a]lthough [the wife] contended that the agreement was invalid based upon unconscionability, lack of consideration, undue influence and coercion in its execution, and fraud based upon misrepresentations of [the husband], [the wife] has failed to present any substantive evidence in support of her contentions," Record at 364. The trial court only declined to enforce Paragraph 25, the attorney fee provision, stating the following reasons:

> [T]he Court has determined that paragraph 25 of the Postnuptial Agreement as written would cause an economic impossibility to anyone but Petitioner Husband to challenge the agreement, but that the

---

**10.** That order states in part:

> It is, therefore, the judgment of this Court that Respondent Wife should be entitled to have a portion of her fees paid by Petitioner Husband. Respondent Wife claims a balance of attorney fees due to her attorneys in the sum $72,-688.25. Respondent Wife claims total attorney fees throughout this action of $89,262.25. It is

> the judgment of the Court that Petitioner Husband should be responsible for the payment of attorney fees on behalf of Respondent Wife in the sum of $69,000.00 which is ordered paid in full by Petitioner Husband sixty (60) days from the date hereof.

Record at 244.

agreement as written was decidedly in favor of Petitioner Husband even though the Court has found that the agreement was valid. The division of marital assets as provided in the agreement, for instance, would most decidedly not be the division if the division of assets was presented to the Court absent such an agreement. There is no attempt in this order to rewrite the contract between the parties, but to give them a parity in determining the validity of an agreement which required many hours of preparation and in the presentation of evidence by both parties. Principally, the Court is concerned with the huge disparity of income between the parties and that by a ruling of this Court to require Respondent Wife to pay for the challenge which she made against the agreement would otherwise act as a deterrent only to her.

Record at 243–44.

We observe that Paragraph 25 does not purport to make the wife responsible for all of the husband's attorney fees. It does not apply to attorney fees relating to the resolution of property division, maintenance, custody, visitation, support, or other issues often incidental to dissolution proceedings. Rather, Paragraph 25 has a limited, narrow scope. It refers only to fees and costs incurred in the prosecution or defense of "an attack by one party as to the validity of this agreement," and only imposes such fees if such challenge is unsuccessful. Record at 817. Paragraph 25 does not impair the wife's right to seek attorney fees pursuant to Indiana Code section 31–1–11.5–16 [11] for her fees related to the litigation of all issues other than the validity of the agreement.

 We find, in accordance with *Voigt*, that the trial court's findings with respect to Paragraph 25 are insufficient to establish fraud, duress, other imperfections of consent, or manifest inequities. To the extent that the judgment of dissolution rejects and refuses to enforce Paragraph 25, we reverse. As previously noted, the trial court, intentionally disregarding Paragraph 25, determined that the husband should pay $69,000.00 of the $89,262.25 attorney fees claimed by the wife.[12] On remand, the trial court shall give full force and effect to this provision by determining the amount of reasonable attorney fees and costs that the parties incurred directly from the challenge to the validity of the parties' settlement agreement, and shall reduce its prior award of attorney fees accordingly.

## Conclusion

Except as otherwise provided above, we summarily affirm the opinion of the Court of Appeals as to its determination of those issues not presented in the husband's petition to transfer. The judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded to the trial court for proceedings consistent with this opinion and that of the Court of Appeals to the extent summarily affirmed.

SHEPARD, C.J., and SULLIVAN, SELBY, and BOEHM, JJ., concur.

11. The Code section provides:

The court from time to time may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorneys' fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment. The court may order the amount to be paid directly to the attorney, who may enforce the order in his own name.

IND.CODE § 31–1–11.5–16 (1988). The recodified version of this section is somewhat different from the version at issue in the present case:

(a) The court periodically may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this article and for attorney's fees and mediation services, including amounts for legal services provided and costs incurred before the commencement of the proceedings or after entry of judgment.
(b) The court may order the amount to be paid directly to the attorney, who may enforce the order in the attorney's name.

IND.CODE § 31–15–10–1 (1997).

12. *See supra* note 9.