Eric N. BEAMAN, Appellant,

v.

Ramona BEAMAN, Appellee.

No. 55A05–0506–CV–351.

Court of Appeals of Indiana.

March 27, 2006.

Melinda O'Dell, Mooresville, for Appellant.

Brian H. Williams, Martinsville, for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Eric Beaman appeals the trial court's refusal to reconsider its summary dissolution of his marriage to Ramona Beaman. We affirm in part, reverse in part, and remand.

## Issue

The sole restated issue is whether the trial court erred in summarily dissolving the Beamans' marriage and incorporating a separation agreement signed by the parties as part of the dissolution decree.

## Facts

The parties were married in 1988 and had one child, A.B., who was born in 1989. On November 24, 2004, the parties executed and filed with the trial court a "Verified Petition for Legal Separation," which they had prepared without the assistance of counsel. App. p. 4. The petition reflected that the parties had agreed at that time on the resolution of various matters involving property distribution, child custody and support, and visitation. Paragraph 13 of the petition read:

> It is expressly understood that this Agreement does not obligate the parties to continue to live in a state of separation or to proceed with the action for divorce. However, in the event that either party shall bring or maintain an action for dissolution of marital relations, or for separate maintenance, this agreement shall be presented to the court and incorporated by reference into any judgement [sic] or decree concerning the matters provided herein. Notwithstanding such incorporation, this agreement shall survive and be enforceable independently of the judgement [sic] and decree.

*Id.* at 6. Also on November 24, the parties filed a written "Waiver of Final Hearing." *Id.* at 8. On February 2, 2005, the trial court entered a legal separation decree, which largely reflected, and in parts expressly incorporated, the separation petition/settlement agreement in its resolution of property and child matters.

On February 28, 2005, Eric, now represented by counsel, filed a dissolution petition; Eric's petition did not mention the earlier separation agreement and requested that the trial court divide the parties' assets and determine the custody and support of A.B. On March 7, the trial court scheduled a preliminary hearing for April 8. On March 14, Ramona, also now represented by counsel, filed a cross petition for dissolution and requested that the trial court enter a summary dissolution decree pursuant to the terms of the parties' separation agreement. On March 24, the trial court entered a dissolution decree that expressly incorporated the previous decree of legal separation. However, the copy of the separation decree attached to the trial court's order contained several handwritten notations purporting to change some of its terms.

On March 31, Eric filed a response objecting to Ramona's request for summary dissolution of the marriage and complete incorporation of the separation decree and requesting that the trial court conduct a hearing; this response did not mention the fact that the trial court had already entered a dissolution decree. On April 4, Ramona filed a petition for nunc pro tunc correction to the dissolution decree, in order to replace the marked-up separation decree attached to it with a "clean" copy.

On April 8, the trial court conducted a brief hearing with the parties, as previously scheduled. At that time, the trial court granted the nunc pro tunc petition. Additionally, Eric's counsel requested that there be a "full-blown" hearing on the dissolution. Tr. p. 6. The trial court then told the parties that it would schedule a one-hour hearing on a later date to allow the parties "a quick summary chance to let me know your positions." *Id.* at 9. The court stated,

> I'll then make the call whether or not the [separation] agreement is otherwise enforceable as it's stated or whether

perhaps we even need to balloon into some more evidence if I don't think something's covered because, you know, the contract itself is what was signed without an attorney between the two of them and if I determine that this agreement is otherwise the agreement and then the issues that you want raised otherwise are already covered, we're done.

*Id.*

The trial court conducted the next hearing on May 18 and described it as "a what the heck is going on hearing." *Id.* at 16. At this time, the parties' attorneys presented arguments as to whether the separation agreement should be considered binding in its entirety or whether further proceedings were necessary. During the hearing, the trial court stated, "I'm just . . . looking at the intent of the parties. They didn't have lawyers and so if they put themselves into a corner, then that's not my problem." *Id.* at 31.

On May 26, the trial court issued an order that treated Eric's March 31 objection to Ramona's request for a summary dissolution decree as a motion to reconsider the March 24 dissolution decree. The trial court declined to reconsider, stating, "the case law is clear that documents such as the Decree of Legal Separation are favored and should be adopted when one party decides to proceed with a Divorce." App. p. 27. Eric now appeals.

### Analysis

■ At the outset, we address the tangled procedural irregularities in this case. As recited above, Eric filed the petition for

dissolution in this case, Ramona filed a cross-petition two weeks later, the trial court summarily entered a dissolution decree just ten days after that without a hearing, and Eric effectively filed a motion to reconsider one week later. We conclude the trial court acted too hastily in entering the dissolution decree. Indiana Code Section 31–15–2–13 permits a trial court to enter a summary dissolution decree without a hearing "[a]t least sixty (60) days after a petition is filed in an action for dissolution of marriage" if both parties have filed a written and signed waiver of final hearing, and filed either a written settlement agreement or a statement that there are no contested issues in the case.[1]

Granted, the parties in this case had filed a purported written "waiver of final hearing" when they jointly petitioned for legal separation. However, there was no dissolution action pending at that time and, therefore, there was no dissolution hearing to be waived. Eric's subsequent petition for dissolution, which was not joined by Ramona, did not contain a written waiver of a final hearing. It does not appear that the pre-dissolution proceeding "waiver of final hearing" should necessarily have been deemed a waiver of a dissolution final hearing, especially where Eric's dissolution petition made no mention of that waiver and did not request summary dissolution.

■ Turning to the merits, our first guidepost in this case is *Pond v. Pond,* 700 N.E.2d 1130 (Ind.1998). There, the Indiana Supreme Court discussed the difference between "reconciliation agreements" and "dissolution settlements." *Id.*

---

1. Indiana Code Section 31–15–2–11 allows a trial court to schedule a final hearing in a dissolution action less than sixty days after the filing of a dissolution petition, but only if the parties have already filed a petition for legal separation; the final dissolution hearing can be scheduled any time after sixty days after the separation petition was filed. It is unclear whether this provision, in conjunction with Section 31–15–2–13, would allow entry of a summary dissolution decree without a hearing less than sixty days after a dissolution petition is filed, but at least sixty days after a separation petition was filed.

at 1132. The former are agreements (referred to as prenuptial, premarital, or antenuptial agreements) entered into in contemplation of marriage or its continuance and that generally must be enforced as written in the event of dissolution. *Id.* The latter are agreements entered into as a consequence of dissolution proceedings (post-nuptial agreements); they are governed by the Indiana Dissolution of Marriage Act ("the Act"), and their acceptance or rejection is within the trial court's discretion.[2] *Id.*

In *Pond,* the husband wanted the Court to label an agreement he and his wife executed as an entirely binding antenuptial reconciliation agreement. The agreement was executed after the husband had filed for legal separation, but before any dissolution action had been initiated. The Court declined to do so and held that the agreement was directed to the settlement of disputes attendant upon the dissolution of the marriage. *Id.* at 1135. Therefore, the trial court had not erred in construing the agreement in accordance with the Act. *Id.* The Court noted several factors that led to this conclusion: (1) nothing in the record indicated that the signing of the agreement altered the apparent intention of the parties to dismantle the marriage, or that continuation of the marriage would constitute any part of the consideration for the agreement; (2) the husband did not dismiss the separation action after the agreement was executed; and (3) the parties began distributing property amongst themselves in accordance with the agreement shortly after it was executed. *Id.* at 1134–35.

Our review of *Pond* and the record in this case leads us to the clear conclusion that the agreement between Eric and Ramona that they signed on November 24, 2004, was a post-nuptial, not antenuptial, agreement. Although no dissolution action was pending at the time, the agreement was filed contemporaneously with a request for legal separation. Additionally, although the agreement provides that the parties would not necessarily commence dissolution proceedings, there is nothing in the record to suggest that the parties entered into this agreement for purposes of maintaining their marriage. To the contrary, the agreement itself reflects that the parties had already divided up much of their personal property, including their vehicles, prior to their separation. There is nothing in the record to suggest that the parties actually attempted any reconciliation following the signing of this agreement; instead, Eric, in fact, did file a petition for dissolution just three months later. The facts here are very similar to *Pond,* and we reach the same conclusion: the parties' agreement is governed by the Act. As such, the trial court had the discretion, under Indiana Code Section 31–15–2–17, to accept or reject the agreement. *See Pond,* 700 N.E.2d at 1132.

However, what *Pond* appeared to give with the one hand regarding post-nuptial agreements, it took away with the other hand. This is because the second part of the *Pond* opinion clearly holds that trial courts may reject dissolution property settlement agreements only in very limited circumstances. Specifically, " 'In reviewing a settlement agreement, a court should concern itself only with fraud, duress, and

---

**2.** The *Pond* Court distanced itself from its earlier decision in *Meehan v. Meehan,* 425 N.E.2d 157, 159 (Ind.1981), where it had said a trial court may "accept, modify, or reject in whole or in part a settlement agreement." *Pond* apparently disapproved of saying trial courts may "modify" a settlement agreement, which it characterized as dicta not supported by any of the four authorities *Meehan* cited for that proposition. *See Pond,* 700 N.E.2d at 1132 n. 4.

other imperfections of consent, or with manifest inequities, particularly those deriving from great disparities in bargaining power.'" *Id.* at 1136 (quoting *Voigt v. Voigt,* 670 N.E.2d 1271, 1277 (Ind.1996)). Additionally, "the power to disapprove a settlement agreement must be exercised with great restraint. A trial judge should not reject such agreements just because she believes she could draft a better one." *Id.* Thus, in reality there is little difference between the conclusiveness and enforceability of prenuptial versus post-nuptial property settlement agreements. A prenuptial or antenuptial agreement may be deemed void only if it was the result of fraud, duress, misrepresentation, or if the agreement is unconscionable. *See Rider v. Rider,* 669 N.E.2d 160, 162 (Ind.1996). This seems very similar to saying a post-nuptial agreement may be rejected only if there is fraud, duress, other imperfections of consent, or if the agreement is manifestly inequitable.

On appeal, Eric does not allege the existence of any basis for rejecting the property settlement agreement under the limited parameters set forth in *Pond* and *Voigt.* He makes no argument that the agreement was the result of fraud, duress, or other imperfections of consent, nor does he allege that the agreement is manifestly inequitable. At the first hearing held by the trial court, Eric's attorney made one passing reference to a claim that there was "fraud in the inducement" regarding the settlement agreement, but this statement was never followed up, at either the first or second trial court hearings, with any indication of what such fraud might have been. Tr. p. 10.

 Instead, before the trial court and on appeal, Eric's argument has been that parts of the settlement agreement are vague and ambiguous and, therefore, the trial court should have undertaken to ex-amine these alleged ambiguities and clarify them, if necessary, before making the agreement part of the final dissolution decree. Eric does not cite any authority supporting the proposition that trial courts should undertake to preemptively resolve purported ambiguities in proffered settlement agreements before incorporating such an agreement into a dissolution decree. However, it is abundantly clear that a trial court may entertain requests to clarify and interpret a divorcing couple's property settlement agreement after it has been incorporated into a final dissolution decree, pursuant to ordinary contract law principles. *See, e.g., Thomas v. Thomas,* 577 N.E.2d 216, 219 (Ind.1991); *see also Fackler v. Powell,* 839 N.E.2d 165 (2005) (holding that dissolution court that has incorporated property settlement agreement into final dissolution decree retains exclusive jurisdiction to interpret the decree).

It is unclear to us why a trial court should be precluded from entertaining arguments that a settlement agreement is vague and ambiguous simply because such arguments are being made contemporaneously with the dissolution proceedings, and not sometime after a final decree has already been entered. Rather, we see no reason to deny a request for clarification of a settlement agreement's terms that is made before a dissolution is final; if such clarifications can be addressed and, if need be, resolved before a divorce is final, that action would foster the finality of the dissolution and discourage ongoing litigation between the parties. We point out that clarifying a settlement agreement, consistent with the parties' intent, is not the same as modifying the agreement. *See Voigt,* 670 N.E.2d at 1275 n. 6.

Eric contends that several provisions in the settlement agreement he executed are ambiguous, and/or clearly were intended to

apply only during the duration of his legal separation from Ramona and not forever following their divorce. He notes, for example, that the settlement agreement refers to Ramona retaining "possession" of the marital residence without stating the legal nature of her interest in the residence. App. pp. 5, 9. The agreement also provides that the parties would split any income tax refunds 50/50, that Eric may continue parking one vehicle at the marital residence, and that he may store his personal belongings at the residence. Eric seems to contend that these provisions clearly were not intended to remain in effect ad infinitum or made part of a final dissolution decree. Eric also notes that the original copy of the separation decree that was attached to the dissolution decree contained several handwritten notations purporting to alter some of terms of the settlement agreement, which he contends also creates confusion about whether the parties really intended the entirety of the settlement agreement as originally written to be controlling.

The trial court indicated that it would not consider construing or interpreting any part of the agreement. As it told the parties, "I'm just ... looking at the intent of the parties. They didn't have lawyers and so if they put themselves into a corner, then that's not my problem." Tr. p. 31. Under the circumstances, we conclude the trial court should have entertained and ruled upon Eric's arguments that the settlement agreement was vague or ambiguous in several respects before incorporating that agreement wholesale into the dissolution decree. We believe this is especially true here, given that both parties were unrepresented by counsel when the agreement was drafted and executed. Although parties certainly are free to represent themselves and craft their own settlement agreements, it is also true that the use of "layman's terms," as Ra-

mona calls them, may unnecessarily lead to confusion when it comes time to implement the agreement. Appellee's Br. p. 11. We remand for the trial court to examine, in accordance with contract law principles, Eric's arguments that parts of the settlement agreement are vague or ambiguous.

We also note that a child's interests are at stake in this case. A.B. is not a young child, but she is a child nonetheless, and issues of custody, support, and visitation are present. A court's review of a proffered settlement regarding child issues is governed by much different principles than review of property distribution issues. In the *Voigt* case, our Supreme Court set forth the general principle that in reviewing property settlement or spousal maintenance agreements, courts should only concern themselves with fraud, duress, other imperfections of consent, or manifest inequities. *Voigt,* 670 N.E.2d at 1278. The *Voigt* Court noted, "In the usual case, freedom of contract will, it is hoped, produce mutually acceptable accords, to which parties will voluntarily adhere." *Id.* The Court hastened to add, however, that "the same principles and standards cannot apply to child custody and support provisions of proffered settlement agreements.... If there is one overriding policy concern in dissolution actions, it is protecting the welfare and interests of children." *Id.* at 1278 n. 10.

In accordance with *Voigt's* observation, this court has held, "When custody, support, or visitation issues are being determined, the best interests of the child are the primary consideration." *In re Paternity of K.J.L.,* 725 N.E.2d 155, 158 (Ind. Ct.App.2000). Although courts should give great weight to the wishes of the parents, it is the duty of the trial court to determine if any agreement is in the best interests of the child. *Id.* Therefore, no

agreement between parties that affects child custody, support, and visitation issues is automatically binding upon the trial court. *See id.* One possible basis for rejecting a parties' agreement as not in the best interests of a child may arise if the agreement is ambiguous or unworkable and almost certainly will demand further litigation. *Keen v. Keen,* 629 N.E.2d 938, 941 (Ind.Ct.App.1994).

There is no indication in this record that the trial court undertook any examination of whether the parties' agreement regarding the custody and support of and visitation with A.B. was in her best interests. A trial court cannot "rubber-stamp" such an agreement. On remand, the trial court must examine whether the parties' custody, support, and visitation agreement is in A.B.'s best interests. This examination might not be as detailed as might be the case had the parties not reached an agreement, but it still must take place.

In particular, we direct the trial court to address one of the agreement's more unorthodox provisions that we believe has the potential to be unworkable and lead to future litigation. Eric has been granted virtually unlimited but completely unscheduled visitation with A.B., as long as he requests each visit at least one day in advance, the requested visit will not "disrupt previous made plans" of Ramona or A.B., and Eric is alcohol and "drug-free" during each visit. App. p. 4. On remand,

the trial court should examine whether such an open-ended and entirely unscheduled arrangement will be workable or in A.B.'s best interests in the long term and whether it is compatible with Ramona being entrusted with sole physical and legal custody of A.B.[3]

■ On a final note, we reject Ramona's argument that Eric invited any claimed error with respect to the settlement agreement by signing it and submitting to the court as part of the legal separation action. Acceptance of such an argument essentially would preclude any party to a contract from later claiming it was invalid, vague, or ambiguous in any respect. Additionally, after the commencement of the dissolution action, Eric never acquiesced in the trial court adopting the settlement agreement wholesale as part of the final dissolution decree. *Cf. Wright v. Wright,* 782 N.E.2d 363, 368 (Ind.Ct.App.2002) (holding wife had invited any claimed error in settlement agreement by failing to object to any but one word of it when husband read agreement to the trial court at final dissolution hearing). We decline to find "invited error" here, especially with respect to the settlement agreement's child provisions.

## Conclusion

We affirm the dissolution of the parties' marriage. However, because trial courts

---

3. As Eric notes, the visitation arrangement deviates significantly from the Indiana Parenting Time Guidelines. There is a presumption that the guidelines are applicable in any case involving visitation. Any deviation from them requires a written explanation from *either* the parties or the court. *See* Ind. Parenting Time Guidelines, Scope of Application, 2. No such explanation exists in this case.

The amount of child support Eric has agreed to pay also is higher than what would be provided by the Indiana Child Support Guidelines. Although Eric argues to the con-

trary, it is not apparent to us that a trial court has to independently justify a child support deviation that is more generous than the Child Support Guidelines, if the parties have agreed to it. *See Hay v. Hay,* 730 N.E.2d 787, 793 (Ind.Ct.App.2000) ("Parents can agree to pay more [child support] than a court has the power to order."). Some independent justification might be necessary if the trial court decides to accept an agreement of the parties for *less* child support than otherwise would be required by the Guidelines.

have the power to address arguments that a divorcing couple's settlement agreement is partially vague and ambiguous and to clarify such an agreement accordingly, we conclude the trial court here erred in failing to consider or address Eric's arguments in that respect regarding his settlement agreement with Ramona. Additionally, the trial court should have addressed more carefully whether the settlement agreement's provisions regarding the parties' child are in her best interests. We reverse the dissolution decree to the extent that it incorporates the settlement agreement regarding property and child matters, and remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

SHARPNACK, J., and RILEY, J., concur.