Timothy D. WOLSHIRE, Appellant–Respondent,

v.

Sharon M. WOLSHIRE, Appellee–Petitioner.

No. 16A05–0812–CV–722.

Court of Appeals of Indiana.

May 12, 2009.

Steven P. Teverbaugh, Greensburg, IN, Attorney for Appellant.

Frank I. Hamilton, Jr., Hamilton & Tebbe Law Office, P.C., Greensburg, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, Timothy D. Wolshire (Husband), appeals the trial court's decree arising from the dissolution of his marriage to Sharon M. Wolshire (Wife).

We reverse and remand with instructions.

### ISSUES

Husband presents four issues for our review, but we need to reach only three, which we restate as:

(1) Whether the trial court erred by adding language to the provision of the parties' Separation Agreement governing the division of the proceeds from the potential sale of the marital residence;

(2) Whether the trial court erred by awarding Wife a portion of Husband's military retirement benefits;[1] and

(3) Whether the trial court erred by awarding Wife a portion of the military housing allowance received by Husband following the parties' separation.

### FACTS AND PROCEDURAL HISTORY

Husband joined the military in 1984. In 1992, Husband "got together" with Wife, who was also in the military at the time.[2] (Transcript p. 4). The couple married in 1995. Husband left full-time military service in 1996 and began serving part-time in the National Guard.

On August 31, 2005, Wife filed a petition for legal separation. The next day, September 1, 2005, Husband, who was not represented by counsel, and Wife, who was, filed a Separation Agreement with the trial court. The opening paragraph provided:

> There is currently pending in the above captioned matter a legal separation action between the parties, and this agreement settles all issues arising in or outside the marital relationship to all things, actions, property, whether real or personal, and all interests of the parties, including but not limited to, the disposition of their property, and this agreement constitutes a complete discharge of the parties' legal obligations to each other, and both parties stipulate and agree that this is a fair, just, equitable and reasonable agreement, and that it shall become effective and binding upon the parties, their respective legal representatives, successors and assigns, immediately upon the approval of this agreement by the Court.

(Appellant's App. p. 11). The agreement called for the parties' real estate in Indiana (the marital residence), Ohio, and Tennessee to be divided as follows:

> Wife shall receive as her sole and individual property the marital residence located at 4515 S. Co. Rd. 700 W., Greensburg, Indiana, as well as the Tennessee property on Dunaway Ridge Road, noted on Tax Map No. 95 as Parcel 3.10. Husband shall sign Quit–Claim Deeds granting his interest in each property to Wife.

---

1. Husband also challenges the formula used by the trial court in dividing his military retirement benefits. Because we conclude that the trial court erred by awarding Wife *any* of those benefits, we need not reach that issue.

2. Wife testified during the final hearing that she served in the military for twelve and a half years, but the parties do not specify the exact years in which her service began and ended. Wife did testify that she started receiving VA disability benefits in 1995.

Wife shall offer Husband the sum of Thirty–Five Thousand Dollars ($35,000.00) if she sells the marital residence for at least Two Hundred Thousand Dollars ($200,000.00) within five (5) years from the date of this agreement. If said residence sells for less than Two Hundred Thousand Dollars ($200,000.00), then Wife shall offer Husband an amount equal to seventeen and one-half percent (17.5%) of the sale price.

Husband may reside in [the] marital residence as a tenant until November 15, 2005, during which time Husband shall pay and be responsible for one-half (1/2) of all household expenses and he shall assist with all outside yard maintenance.

On or before November 15, 2005, Husband shall remove his possessions outlined hereinbelow. Any items left after November 15, 2005 shall become property of Wife unless otherwise previously agreed to between the parties.

Once Husband has vacated the marital residence, he shall have no contact with Wife. All correspondence shall be through Wife's attorney.

Husband shall retain the property in Ohio, which is already in his individual name.

(Appellant's App. pp. 11–12). Another section of the agreement covered the distribution of the parties' personal property, including bank accounts. Finally, the section headed "Other Property" provided:

Except as otherwise specifically provided in this Separation Agreement, all money, stock and property of every nature, real or personal, tangible or intangible, securities, bank accounts now owned by either Husband or Wife shall become the separate and exclusive property of the party now owning it, divested of any rights of dower, courtesy, descent or encumbrances or any other right or rights of the other party heretofore existing or arising out of the marital relationship of the parties, except as provided herein.

(Appellant's App. p. 14). The trial court approved the parties' Separation Agreement the same day it was filed.

In March of 2006, Husband began serving full-time with the National Guard. As a result, he started receiving a "basic allowance for housing" (BAH) of $1,412.00 per month. (Tr. p. 33). In September of 2007, Husband was advised by a military attorney that he should send his BAH payments to Wife. The attorney wrote, "I informed Mr. Wolshire about the ramifications of complying with Army Regulation 608–99; specifically that, in the absence of a court order or written support agreement, Soldiers are required to provide support at the basic allowance for housing (with dependent) rate. *See* AR 608–99, chapter 1–7(a)." (Husband's Ex. C). From that point forward, Husband sent the BAH money to Wife.

On September 4, 2007, Wife filed a Petition for Dissolution of Marriage, in which she stated that "the parties have accumulated certain real and/or personal property during the course of this marriage in which the interest of the parties should be determined." (Appellant's App. p. 18). She asked that "the Court determine and adjust the property rights of the parties[.]" (Appellant's App. p. 18).

A final hearing was held on August 14, 2008. At the beginning of the hearing, Wife testified that she was willing to be bound by the terms of the parties' Separation Agreement but asked the trial court to address the BAH payments and Husband's military retirement benefits. Wife testified that she did not find out that she was entitled to the BAH payments until August or September of 2007, so they were

"not even on the radar screen" at the time the parties entered the Separation Agreement. (Tr. p. 11). She asked the trial court to order Husband to reimburse her for the BAH payments he kept between March of 2006 and September of 2007. When asked why Husband's military retirement benefits were not addressed in the Separation Agreement, Wife stated, "It simply did not come up as we were putting together this agreement. It was an oversight." (Tr. p. 20).

Husband then took the stand and testified regarding the BAH payments for March of 2006, when he started receiving the payments, through September of 2007, when he was advised by the military attorney that he should be sending the payments to Wife. He said that, when he started receiving the payments, his understanding of the relevant military regulations was that he was required to send the payments to Wife unless a court order to the contrary was in place, and he believed that the Separation Agreement approved by the trial court was such an order, that is, that it relieved him of his duty to send the BAH payments to Wife. Regarding military retirement benefits, Husband testified that he had been in the military long enough—nearly twenty-four years—that he will receive a pension when he chooses to retire. At the conclusion of the hearing, the trial court granted the petition for dissolution but took the issue of property division under advisement.

On September 22, 2008, the trial court issued its Decree of Dissolution of Marriage. The decree began:

And the Court, being duly advised in the agreement of the parties with regard to most issues, and having heard testimony and arguments of counsel and having determined that the only unresolved issues involved the payment of basic allowance for housing (BAH) and the allo-

cation of Husband's military retirement benefits, now finds and adjudges as follows . . .

(Appellant's App. p. 4). The portion of the decree regarding the parties' real property was the same as the Separation Agreement, except for the addition of the following language:

Upon the sale of the marital residence, Husband shall be responsible for seventeen and one-half percent (17.5%) of the taxes, insurance and the replacement of existing structures such as doors, heating & air conditioning, plumbing, electrical and roof, from September 1, 2005, to the date of sale, which shall be deducted from his portion of the sales price. If the marital residence does not sell within five (5) years of September 1, 2005, then Wife shall keep the real estate free from any financial obligation to Husband.

(Appellant's App. p. 5). The decree also included the following provision regarding the BAH payments:

That with regard to the basic allowance for housing (BAH), the Court finds that Husband shall pay Wife the equivalent of four (4) months of monthly benefits in the amount of One Thousand Four Hundred Twelve Dollars ($1,412.00), for a total of Five Thousand Six Hundred Forty-eight Dollars ($5,648.00)[.]

(Appellant's App. p. 6). Finally, the trial court addressed Husband's military retirement benefits as follows:

At such time as Husband begins to receive military retirement, Wife shall be entitled to a percentage of his retirement, which shall be calculated by dividing twelve (12) by the number of years and months of service. By way of example, if Husband is in the service for thirty and one-half (30.5) years, then Wife's percentage would be twelve (12)

divided by 30.5, which equals approximately thirty-nine percent (39%), and then divide that by two (2), which would be nineteen and one-half percent (19.5%). This percentage will vary depending on how many years and months Husband serves in the military, and both parties agree to cooperate and obtain signatures and/or Court orders complying with military law to effectuate the terms of this order.

(Appellant's App. p. 6).

Husband now appeals.[3] Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Husband argues that the trial court erred in three ways: (1) adding the language regarding taxes, insurance, and repairs to the provision of the Separation Agreement governing the sale of the marital residence; (2) awarding Wife a portion of his military retirement benefits; and (3) awarding Wife a portion of the BAH payments. Essentially, Husband contends that all property issues were settled by the parties' Separation Agreement, while Wife asserts that the Separation Agreement left the three issues above unresolved.

■■■ Dissolution settlement agreements are encouraged under the Indiana Dissolution of Marriage Act. *Pond v. Pond*, 700 N.E.2d 1130, 1136 (Ind.1998). Parties are expressly authorized to agree in writing to provisions for the disposition of any property owned by either or both of them. *Id.; see also* I.C. § 31–15–2–17. There is a very strong presumption of enforceability of contracts that represent the freely bargained agreement of the parties. *Pond*, 700 N.E.2d at 1136. As such, Indiana courts have not hesitated to enforce a divorce settlement agreement that

would have been in excess of the divorce court's authority had it been crafted by the divorce court and that was shown to be, over time, grossly inequitable. *Id.* The interpretation of such an agreement, as with any other contract, presents a question of law and is reviewed *de novo*. *Bailey v. Mann*, 895 N.E.2d 1215, 1217 (Ind. 2008).

By its own terms, the Separation Agreement in this case "settles all issues arising in or outside the marital relationship," including the disposition of the parties' property, and "constitutes a complete discharge of the parties' legal obligations to each other[.]" (Appellant's App. p. 11). Moreover, the parties "stipulate[d] and agree[d] that this is a fair, just, equitable and reasonable agreement" that would become effective and binding immediately upon the approval of the trial court. (Appellant's App. p. 11). The trial court approved the agreement the same day it was filed. As for any property not specifically mentioned, the Separation Agreement provided that "all money, stock and property of every nature, real or personal, tangible or intangible, securities, bank accounts now owned by either Husband or Wife shall become the separate and exclusive property of the party now owning it," divested of any "rights of the other party heretofore existing or arising out of the marital relationship of the parties[.]" (Appellant's App. p. 14). With this backdrop in mind, we address each of the three provisions added by the trial court.

### I. Proceeds from the Sale of the Marital Residence

■■ The parties' Separation Agreement provided that Wife would receive the marital residence and that she would offer Husband roughly 17.5% of the sale price if

---

**3.** After Husband filed his notice of appeal, the trial court entered a supplemental Court Order Regarding Retirement. That supplemental order does not affect the issues on appeal.

she sells the residence within five years of the date of the agreement. The trial court's decree of dissolution retained this language but added a provision stating that, "[u]pon the sale of the marital residence, Husband shall be responsible for seventeen and one-half percent (17.5%) of the taxes, insurance and the replacement of existing structures such as doors, heating & air conditioning, plumbing, electrical and roof, from September 1, 2005, to the date of sale, which shall be deducted from his portion of the sales price." (Appellant's App. p. 5). We conclude that the trial court erred by adding this language.[4]

■ "In reviewing a settlement agreement, a court should concern itself only with fraud, duress, and other imperfections of consent, or with manifest inequities, particularly those deriving from great disparities in bargaining power." *Pond*, 700 N.E.2d at 1136; *see also Beaman v. Beaman*, 844 N.E.2d 525, 530–31 (Ind.Ct.App. 2006). Here, Wife has not claimed that the provision of the Separation Agreement regarding the proceeds from the sale of the marital residence was the result of fraud or duress or a great disparity in bargaining power. In fact, it was Wife who had the benefit of counsel when entering the agreement, while Husband apparently negotiated on his own. Moreover, during the final hearing, Wife did not even ask the trial court to add the language in question. Our supreme court has said that a trial court should not reject a settlement agreement just because it believes that it can draft a better one. *Pond*, 700 N.E.2d at 1136. We therefore remand to the trial court with instructions to remove the challenged language from its dissolution decree.

## II. *Husband's Military Retirement Benefits*

■ We reach the same conclusion with regard to the trial court's division of Husband's future military retirement benefits. Generally, a spouse's military retirement benefits are a marital asset subject to division. *See, e.g., Griffin v. Griffin*, 872 N.E.2d 653 (Ind.Ct.App.2007). Here, however, the parties entered an agreement that made no mention of Husband's benefits. When asked about this omission during the final hearing, Wife stated, "It simply did not come up as we were putting together this agreement. It was an oversight." (Tr. p. 20). As noted above, a trial court reviewing a settlement agreement "should concern itself only with fraud, duress, and other imperfections of consent, or with manifest inequities, particularly those deriving from great disparities in bargaining power." *Pond*, 700 N.E.2d at 1136. A mere oversight does not rise to this level. We instruct the trial court, on remand, to remove the provision concerning Husband's military retirement benefits from the decree of dissolution.

## III. *BAH Payments*

■ Finally, Husband argues that the trial court erred by awarding Wife $5,648.00 based on the BAH payments he received between March of 2006 and September of 2007. Husband would have us hold that this issue is controlled by the "Other Property" provision of the parties' Separation Agreement, which, again, provided:

> Except as otherwise specifically provided in this Separation Agreement, all money, stock and property of every nature, real or personal, tangible or intangible, securities, bank accounts now

---

4. As detailed above, the trial court added this language despite its statement that "the only unresolved issues involved the payment of basic allowance for housing (BAH) and the allocation of Husband's military retirement benefits[.]" (Appellant's App. p. 4).

owned by either Husband or Wife shall become the separate and exclusive property of the party now owning it, divested of any rights of dower, courtesy, descent or encumbrances or any other right or rights of the other party heretofore existing or arising out of the marital relationship of the parties, except as provided herein.

(Appellant's App. p. 14). Husband urges that, under this provision, "[a]ny other property not specifically mentioned in the settlement agreement becomes sole property of the person whose name the property is in," that the BAH payments "are property, and specifically not mentioned in the settlement agreement," and that they should therefore be considered Husband's sole property, since they "are in his individual name." (Appellant's Br. p. 14). Wife, on the other hand, contends that the BAH payments "needed to be dealt with" by the trial court because "[t]he parties did not have an agreement on [that] issue[.]" (Appellee's Br. p. 9). "In fact," she continues, "the Separation Agreement was totally silent" regarding the BAH payments. (Appellee's Br. p. 9).

The problem with Wife's argument is that it would render the "Other Property" provision of the parties' Separation Agreement completely meaningless. That is, while the "Other Property" provision purports to award any property not specifically mentioned to the party "now owning it," Wife would have us hold that the parties intended for the trial court to control the division of any such property. Nothing in the Separation Agreement supports such a conclusion. Because the BAH payments were not specifically mentioned in the Separation Agreement, and because they were issued to Husband, they were his property, and the trial court erred by making an award to Wife based on the payments. We instruct the trial court to remove the provision regarding BAH payments from its decree of dissolution.

Obviously, at least part of the reason that the BAH payments were not mentioned in the Separation Agreement was that the payments had not yet begun when Husband and Wife signed that agreement. But losing any right she might have had in later-acquired property was one of the risks Wife took by signing the Separation Agreement. The agreement "settles all issues arising in or outside the marital relationship to all things, actions, property, whether real or personal, and all interests of the parties, including but not limited to, the disposition of their property," and it "constitutes a complete discharge of the parties' legal obligations to each other, and both parties stipulate and agree that this is a fair, just, equitable and reasonable agreement[.]" (Appellant's App. p. 11). More specifically, as to property in Husband's name, the "Other Property" provision divested Wife of any rights "heretofore existing or arising out of the marital relationship of the parties[.]" (Appellant's App. p. 14). This is very broad language, but Wife agreed to it, and not because of any disparity in bargaining power. If anything, Wife had the upper hand, since she was represented by counsel and husband was not.

Finally, we recognize that Husband, Wife, and a military attorney all apparently agreed in September of 2007 that Wife was entitled to the BAH payments and that Wife in fact received the payments from that point forward. However, it seems that Wife simply got lucky in this regard. In a letter written to Husband, the military attorney remarked that Army Regulation 608–99 entitled Wife to the payments *"in the absence of a court order or written support agreement[.]"* (Husband's Ex. C) (emphasis added). Here, Husband and Wife *had* reached an agree-

ment that, by its own terms, settled all issues between the parties, and the trial court had approved that agreement. As such, Wife was not entitled to the BAH payments under the military regulation in question.[5]

## CONCLUSION

Based on the foregoing, we conclude that the trial court erred by adding new language to the provision of the parties' Separation Agreement governing the proceeds of the potential sale of the marital residence and by awarding Wife a portion of Husband's military retirement benefits and a portion of the BAH payments. We remand this cause to the trial court with instructions to amend its decree of dissolution in accordance with this opinion.

Reversed and remanded with instructions.

KIRSCH, J., and MATHIAS, J., concur.

---

5. That is not to say that Husband can now seek the return of the BAH payments he made after September of 2007. He did not ask for such relief during the final hearing, and he has not done so in this appeal. We hold only that the trial court erred by ordering Husband to reimburse Wife for a portion of the BAH payments he received between March of 2006 and September of 2007.