Sally B. ATKINS, Petitioner–Appellant

v.

William J. ATKINS,
Respondent–Appellee.

No. 29A02–8708–CV–308.

Court of Appeals of Indiana,
Third District.

March 2, 1989.

Franklin I. Miroff, Monty K. Woolsey, Ancel, Miroff & Frank, P.C., Indianapolis, for petitioner-appellant.

Gary R. Landau, John D. Schiff, Indianapolis, for respondent-appellee.

GARRARD, Presiding Judge.

This appeal arises from the trial court's refusal to set aside its division of property in a marriage dissolution. The judgment was based upon a property settlement agreement executed by the parties.

The parties were married in 1976, and the wife sued for dissolution on October 24, 1985. She was a self-employed photographer. Her husband was employed by Smith Barney, Inc. as a stockbroker.

When the dissolution was submitted the wife was present with counsel and the husband was present without his attorney. The property settlement agreement was

presented to the court and both parties testified for its acceptance.

Pursuant to the agreement the wife received the marital residence subject to the mortgage upon it, other property, and a maintenance award for the following four years. Net value of the residence was estimated at fifty thousand dollars ($50,000). The husband received a variety of assets together with three thousand six hundred fifty (3,650) shares of Smith Barney common stock, of which five hundred (500) shares had been purchased while the dissolution was pending. The wife had the Smith Barney stock appraised by an accountant, who had valued it at twenty-five dollars ($25) per share. She testified that the husband had a purchase money loan on the stock and acknowledged that capital gains taxes would be owed if it were sold. She considered the home and the stock a trade off.

The court accepted the agreement and granted the dissolution. In fact, the Smith Barney stock was worth $184,940 rather than the $87,500 value placed upon it by the wife.

The record discloses that the wife conducted discovery concerning the stock and secured an evaluation from an accountant; the husband placed no specific value on it during their negotiations. The stock was not traded publicly, could only be held by Smith Barney employees, and its sale was restricted to resale to Smith Barney at book value. The stock was valued at twenty-five dollars ($25) per share and it is undisputed that this was its book value in the spring of 1987.

However, on May 27th, the day before the final hearing, Smith Barney announced that it had executed a merger agreement with Primerica Corporation subject to approval by its shareholders and regulatory authorities. Pursuant to the merger, the value of a Smith Barney share increased to fifty-two dollars and eighty-four cents ($52.84). Notice of the merger was carried on the Broadtape on the 27th. Husband received a memo that morning advising of the merger and indicating an acquisition price of seven hundred fifty million dollars in cash, which, according to the memo, was "a little more than twice the company's book value." (Husband learned the actual per share value on an unspecified date a few days later.)

At that point the property settlement agreement was still unexecuted. Husband notified his attorneys of the proposed merger and urged the speedy completion of the proceedings. Husband apparently signed the agreement on the 27th and the wife signed it on May 28th, the day of the final hearing. Neither the husband nor his attorneys notified wife or her attorneys of the announcement.

On May 28th the *Indianapolis Star* reported the merger proposal in its business section. Later that day the parties appeared in court and finalized the dissolution.

The husband testified at the final hearing. He was not expressly questioned about the value of the stock and was not specifically asked whether there were any changes or unusual developments affecting the status of the parties. The following did occur during his examination:

Q. To the best of your knowledge and ability, are all of your assets, as well as all of your liabilities covered in this agreement?

A. Yes.

Q. Are you aware of anything that is not covered?

A. No, sir.

Q. Do you understand that once the Court approves this agreement that all the issues concerning division of property, both real and personal, as well as allocation of debt, will be a final decision?

A. Correct.

Q. It would be difficult to change that decision unless there's some very strange circumstances involved, such as fraud.

A. Right.

Q. Do you have anything to say to Judge Nash?

A. No, sir.

\*　　\*　　\*　　\*　　\*　　\*

BY THE COURT: Mr. Atkins, do you believe there's anything that should be presented in order to make a just decision in this matter that has not been presented?

MR. ATKINS: No, sir.

BY THE COURT: Thank you. You may step down.

At the conclusion of the hearing the court accepted and adopted the agreement and granted the dissolution. Six days later the wife moved to set aside the judgment alleging fraud and newly discovered evidence concerning the increased value of the Smith Barney stock. The court expressly elected to treat her motion as a motion to correct errors and denied relief. This appeal followed.

In his appellee's brief the husband asserts that we should summarily affirm because the wife failed to file a motion to correct errors addressed to the court's ruling on her motion to set aside the judgment and because the motion did not adequately state facts and grounds to support her contentions. We reject both arguments. The motion pointed out that the error relied upon was fraud arising from a near tripling in value of her husband's stock that he had known about and failed to disclose to her. It adequately apprised the court of the facts and grounds upon which she relied, and was sufficient. In addition the court expressly elected to treat the motion as a TR 59 motion. This it was entitled to do. *See, e.g., State ex rel. Indiana Fla. Realty Trust v. Howard Cir. Ct.* (1970), 256 Ind. 11, 264 N.E.2d 315.

Turning to the central issue, we find that the express provisions of the parties' own property settlement agreement are clearly dispositive. In pertinent part the agreement provided:

*Section 7.10. Full Disclosure.* This Agreement of Settlement has been predicated upon assurances of a full and complete disclosure of all pertinent financial and other information about the parties. Husband and Wife warrant and represent that the financial information and statements of Husband and the Wife supplied to Husband's and Wife's counsel as of diverse dates, past and present, have been true, accurate and complete as to any interest, direct, indirect or beneficial, that either may have.

*Section 7.11. Voluntary Execution.* The provisions of this Agreement and their legal effect have been fully explained and agreed to by the parties, and each party acknowledges that the Agreement is fair and equitable after full and complete disclosure of all of the assets and liabilities of the respective parties, as of the date of this Agreement, and after considerable negotiations between the parties. Each party hereby acknowledges that this Agreement is being entered into voluntarily and that it is not the result of any duress or undue influence.

The public policy of this state favors the amicable settlement by written agreement of the property rights of those citizens who are having their marriages dissolved. *State ex rel. Roberts v. Morgan Cir. Ct.* (1968), 249 Ind. 649, 232 N.E.2d 871, 873 *overruled on other grounds, State ex rel. Schutz v. Marion Superior Court* (1974), 261 Ind. 535, 307 N.E.2d 53, 55; *Stockton v. Stockton* (1982), Ind.App., 435 N.E.2d 586, 589. Thus, IC 31–1–11.5–10 expressly encourages such agreements and provides that when accepted by the court they may not be modified except as the agreement, itself, may prescribe or the parties may subsequently consent.

The cases make clear, however, that a trial court has discretion to determine whether or not to accept an agreement in the first instance. We agree with the court in *Stockton, supra,* that the court should nevertheless do so unless it determines that the agreement was the product of some unfairness, unreasonableness or manifest inequity in its terms or that it was procured through fraud, misrepresentation, coercion, duress or lack of full disclosure. 435 N.E.2d at 589. By investing the court with discretion to reject agreements where it appears to the court that such circumstances exist, we further the public policy by encouraging agreements premised on

voluntary, intelligent choice and public confidence in the process.

▆▆▆ The husband argues that he committed no fraud. He points out that he was never asked for the merger information, that the wife relied upon her own retained professionals to value the stock, and that the merger information was a matter of public record prior to the hearing. He also points out that the merger was incomplete in the sense that regulatory and shareholder approvals still had to be obtained. (Subsequently, they were and the merger was effected.)

Were this an arm's length transaction, these arguments might be telling. Under the circumstances of this case they are superfluous. The agreement required that each party make full and complete disclosure of all pertinent financial and other information about the parties as of the date of the agreement, which was May 28, 1987, the date of the final hearing. Such provisions do not call for a minute examination of syntax. They require the disclosure by one party to the other of all matters which in good conscience ought to be disclosed. Moreover, the failure to disclose when such a duty exists constitutes constructive fraud (*Brown v. Indiana Nat. Bank* (1985), Ind. App., 476 N.E.2d 888, 891) and is ground for setting aside an order of property disposition. IC 31–1–11.5–17.

We hold no doubt as to the significance of the news learned by the husband on May 27th. That the case might have been disposed of long before that date, or even that the wife was largely responsible for the delay, are of no legal moment. At that point the agreement was unsigned and the case untried. The agreement required full and fair disclosure. The information withheld had a potentially substantial impact on the value of the marital estate and the relative positions of the parties. By failing to make disclosure the husband breached the condition of the agreement and perpetrated a constructive fraud entitling the wife to have the agreement and the judgment, which adopted it as a valid agreement of the parties, set aside.

Accordingly, that part of the dissolution judgment determining the division of marital assets (including the award of maintenance) is reversed and remanded for a new trial.

REVERSED AND REMANDED.

STATON, J., concurs and files separate opinion.

HOFFMAN, J., dissents and files separate opinion.

STATON, Judge, concurring.

I concur. However, I hasten to point out that not every change in the valuation of assets which are part of a property settlement should necessitate the setting aside of the judgment. Only substantial changes such as the one experienced in this case should require setting the negotiated settlement aside. If a substantial change in the value of an asset takes place after the settlement has been agreed to but not approved by the Court, the parties have a clear duty to advise the Court in order to avoid unintentional inequities. It may appear to some litigants that once the settlement is signed by the parties, any substantial increase or decrease in the valuation of assets is merely the "luck of the draw" or a matter beyond the control of the Court. This should never be, since the Court has the ultimate responsibility to see that a fair and equitable distribution has taken place between the parties.

HOFFMAN, Judge, dissenting.

I respectfully dissent. First, I do not believe the motion to set aside the judgment alleging fraud and the existence of newly discovered evidence should have been treated as a motion to correct errors under these circumstances.

Second, the majority too broadly interprets the pertinent portions of the agreement. The sections, when taken together, require the parties to fully disclose the existence of assets. The husband had fully complied by disclosing his ownership of the stock. At no time did the husband value the stock. His failure to disclose that a possible merger could alter the wife's valu-

ation of the stock cannot amount to constructive fraud because no duty existed. Even if the agreement could arguably give rise to a duty, the facts in the present case preclude such a finding. The husband could not be held accountable on the date of the agreement for a possible increase in the value of the stock based upon an event not certain to occur in the future.

Third, the majority and concurring opinions leave one with the impression that it is manifestly unfair for a party in a dissolution to fail to disclose a substantial change in valuation of assets which occurs in temporal proximity to the execution of the agreement. Fairness should not be measured in subjective terms which require more than compliance with the terms of the agreement.

By way of analogy, IND.CODE § 31–1–11.5–11 requires only that courts divide property acquired "prior to final sep-aration of the parties" or that property acquired by joint efforts. The legislature has determined that no disclosure and division is required when the parties acquire additional property after the date of final separation but before the dissolution becomes final. It is the obvious intention of the legislature that some date certain serve as the point of termination, after which all claims by one estranged party to the other's assets are extinguished. The parties in the present case had reached that point, even through the agreement.

For the foregoing reasons I would vote to affirm the trial court's decision.