Ronald VOIGT, Appellant–Petitioner,

v.

Sharon J. VOIGT, Appellee–Respondent.

No. 79A04–9403–CV–105.

Court of Appeals of Indiana,
Fourth District.

Dec. 28, 1994.

Transfer Denied May 4, 1995.

John H. Meyers, Lafayette, for appellant.

Carolyn S. Holder, Holder and Davis, Lafayette, for appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Petitioner–Appellant Ronald Voigt (Ronald) appeals from the denial of his petition to set aside a property settlement agreement entered into as part of the dissolution of marriage with respondent-appellee Sharon J. Voigt (Sharon).

We affirm.

### ISSUES

Ronald raises two issues for our review, which we consolidate and re-state as follows: Whether the trial court erred when it denied Ronald's petition to set aside the property settlement agreement (PSA).

### FACTS AND PROCEDURAL HISTORY

In May, 1991, Ronald and Sharon filed their respective petition and counter-petition for dissolution. The dissolution decree was entered in July, 1992. The PSA entered into by the parties was incorporated by reference into the decree of dissolution.

The PSA contained a maintenance provision which required Ronald to pay to Sharon the sum of $400.00 per week until her death, remarriage, or until such time as she attained the age of sixty-five. Ronald became delinquent on his maintenance obligation almost immediately. Sharon filed several contempt citations against Ronald; however, the court found that Ronald had not willfully failed to pay.

In April, 1993, Ronald filed a petition to modify the dissolution decree. Specifically, he sought to modify or eliminate the maintenance obligation because of a material change of his financial circumstances. Sharon thereafter moved to dismiss Ronald's petition to modify the decree. The trial court dismissed Ronald's petition to modify the decree as to maintenance stating:

> The Court, having taken Wife's Motion to Dismiss under advisement, now finds the parties' agreement regarding maintenance unambiguous with their intent easily determined by the language used therein; that their agreement regarding maintenance cannot be legally modified by the Court without the consent of each thereto, and that, accordingly, Husband's Petition to Modify should be dismissed.

(R. 87). Ronald is presently appealing this issue under appellate cause number 79A02–9311–CV–621.

In September, 1993, Ronald filed a petition to set aside the PSA. He alleged that Sharon had breached the warranty of full disclosure contained in the agreement. A hearing was held on the petition to set aside in November, 1993. After taking the matter under advisement, the trial court ruled as follows:

> The Court, having taken Husband's Petition to Set Aide Property Settlement Agreement under advisement, now finds that the agreement was not procured through fraud, misrepresentation, coercion, duress, or lack of full disclosure, that no credible evidence was adduced at hearing which would lead one to conclude that the Wife's actions or non-action, words, or statements amounted to constructive fraud, and that accordingly, Husband's [P]etition to Set Aside Property Settlement Agreement should be, and hereby is, denied.

(R. 146). Ronald appeals from this order.

## DISCUSSION AND DECISION

Ronald contends that the trial court erred when it denied his petition to set aside the PSA. Specifically, Ronald argues that Sharon breached the warranty of full disclosure contained in the agreement by failing to disclose all of her assets during the PSA negotiations. Ronald alleges that Sharon failed to disclose assets that she held in an IRA with John Hancock Mutual Life Insurance Company and bank accounts that she held in Evansville Federal and Elmhurst Federal Banks. Ronald relies on the following language in the PSA:

> The Husband and Wife hereby represent and warrant to each other that there has been a full disclosure of assets and the value thereof, and that the property referred to in this Agreement represents all of the property of any sort whatsoever and wheresoever located, real, personal or mixed, which either of them has an interest in or right to, whether legal or equitable.

(R. 27).

In support of his argument, Ronald relies on two cases. The first is *Atkins v. Atkins* (1989), Ind.App., 534 N.E.2d 760. In *Atkins* the parties executed a property settlement agreement whereby, among other assets, the wife received the marital residence and the husband received 3,650 shares of Smith Barney, Inc. common stock. The wife had the stock appraised by an accountant, who valued the stock at $25 per share. It was undisputed that the book value of the stock was $25 at the time of the negotiations. However, on the eve of the final hearing, Smith Barney announced a merger, subject to board approval and regulatory agency approval. Pursuant to the merger, Smith Barney stock more than doubled. The Husband, as a Smith Barney stockbroker, had knowledge of the merger and the ramifications the merger would have on the stock value. At this point in time, the PSA was still unexecuted. At the final dissolution hearing, husband testified in essence that he had made a full and complete disclosure in the PSA and that he was unaware of any additional assets. The trial court granted the dissolution and adopted the PSA. Six days later, wife moved to set aside the judgment alleging fraud and newly discovered evidence. The court elected to treat her motion as a motion to correct errors and denied relief. Wife appealed.

On appeal, we relied on the following disclosure provision contained in the PSA:

*Full Disclosure.* This Agreement of Settlement has been predicated upon assurances of a full and complete disclosure of all pertinent financial and other information about the parties. Husband and Wife warrant and represent that the financial information and statements of Husband and the Wife supplied to Husband's and Wife's counsel as of diverse dates, past and present, have been true, accurate and complete as to any interest, direct, indirect or beneficial, that either may have.

*Atkins,* 534 N.E.2d at 762. We said that the provision plainly required disclosure of all matters "which in good conscience ought to be disclosed." *Id.* at 763. Thus, we concluded that the husband breached the warranty of full disclosure contained in the agreement thereby perpetrating a constructive fraud. *Id.* We held that the PSA should be set aside. *Id.*

We find *Atkins* distinguishable from the case before us. In *Atkins* the evidence clearly demonstrated not only that the husband knew of the merger agreement, but also that he notified his attorneys and urged a prompt resolution to the pending dissolution. There is no such evidence of fraud in this case.

The second case that Ronald relies on is *Selke v. Selke* (1992), Ind., 600 N.E.2d 100. In *Selke,* the wife appealed the denial of her post-dissolution petition to set aside a PSA on the grounds of fraud. The parties entered into a PSA which distributed to the husband "all pension rights through his employment." *Id.* at 101. Six months later, the wife filed a petition to set aside alleging that husband fraudulently failed to disclose the value of his profit sharing plan. It was undisputed that "she knew that he had pension rights, that he did not provide information regarding the nature or valuation of the rights, that she never requested disclosure of such information, and that the PSA contained no provision imposing a duty to disclose." *Id.* Essentially, the wife argued that despite the absence of a warranty of full disclosure in the PSA, a duty of spontaneous disclosure exists.[1] We reversed the trial court holding

that the husband's failure to disclose asset valuation, even in the absence of any formal request for the information or duty imposed in the PSA, amounted to constructive fraud. *Selke v. Selke* (1991), Ind.App., 569 N.E.2d 724. On transfer, the supreme court discussed *Atkins* and the fact that the decision in *Atkins* was based on the disclosure provision contained in the PSA. *Atkins,* 534 N.E.2d 760. The court concluded that "[w]hile a duty to disclose asset value information may arise from unique factual circumstances including the express terms of a [PSA], or from a request for discovery under the Indiana Trial Rules, such a duty of spontaneous disclosure is not imposed as a matter of law.... Clearly there is no express statutory duty of mandatory disclosure." *Selke,* 600 N.E.2d at 101–02. The court therefore reversed the court of appeals decision and held that the husband was under no duty to disclose the value of the plan. *Id.* at 102.

This case is also distinguishable because it considers disclosure of asset valuation, rather than the mere existence of an asset. Further, there was no provision in the PSA that required full disclosure. However, this case is instructive in that there is no duty of disclosure as a matter of law.

■ Ronald proceeds on the basis of constructive fraud. Constructive fraud is comprised of five (5) elements: (1) a duty owing by the party to be charged to the complaining party due to their relationship, (2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists, (3) reliance thereon by the complaining party, (4) injury to the complaining party as a proximate result thereof, and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party. *Pughs' IGA Super Food Services, Inc.* (1988), Ind.App., 531 N.E.2d 1194, 1197.

■ Ronald argues that to prevail on a constructive fraud claim he need only show that there was a duty to make a full disclosure and a subsequent failure to do so. In-

---

1. Specifically, the wife argued that I.C. 31-1-11.5-11(b), which requires the dissolution court to divide marital property "in a just and reason-able manner," creates an implicit duty of spontaneous full disclosure.

tent to deceive is not an element of constructive fraud. Rather, the law infers fraud from the relationship of the parties and the circumstances which surround them. *Sanders v. Townsend* (1991), Ind., 582 N.E.2d 355, 358.

The record reveals that Ronald discovered these additional assets as he prepared for an IRS audit in September, 1992. He inadvertently discovered statements and realized that Sharon had not disclosed these assets during the PSA negotiations. There is a conflict in the testimony regarding whether the parties prepared the inventory of assets together or whether Sharon alone prepared it. In any event, the testimony clearly demonstrates that Ronald did not submit any additional list of assets to Sharon. Therefore, the only list relied upon was the list that Sharon prepared.

With reference to the IRA, Sharon testified that it had been in existence for several years. She opened it because "[her] cousin was just getting started in the business and [Sharon] gave her some money right in the beginning so that [her cousin] could get some business, and [Sharon] never touched it after that." (R. 239). Sharon said that she had not put money in the IRA for approximately 15–20 years. In fact, she had forgotten about it, and so had Ronald. The PSA provides that "... all I.R.A. accounts of the parties shall be divided equally between the parties." (R. 26). Sharon testified that she would divide the asset equally with Ronald.

With reference to the bank accounts, Sharon testified that she had forgotten about them. The Evansville Federal account was opened several years ago for security deposits from the parties' apartment complex. Sharon said that when the complex is sold, the money in that account will go to the buyer. Sharon testified that she overlooked the Elmhurst Federal account because she did not use it and therefore only received a yearly bank statement. Sharon's mother's name was on the account and her mother closed the account. Ronald's name was also on this account; however, Sharon testified that her mother thought it was hers. Sharon testified that "[a]s far as [she] knew, [she had] disclosed everything." R. 236.

■ While, in order to prevail, Ronald need not show that Sharon intentionally or knowingly misrepresented the facts, we still find that Ronald fails to meet the requirements of constructive fraud. He has not demonstrated any injury as a result of Sharon's inadvertent misrepresentation. The IRA account remains untouched and the PSA provides that Ronald is entitled to one-half of its value. The contents of the disputed account at Evansville Federal have presumably been transferred to the new owners of the apartment complex, as the closing on the sale of that property was pending at the time of the November, 1993, hearing. The Elmhurst Federal account, however, was closed by Sharon's mother. The evidence reveals that Sharon's mother believed the approximate $1,500.00 in the account to be her own, and she closed the account without the advice of Sharon. Apparently, the parties had forgotten about this account.

■ Furthermore, Ronald had access to information regarding each of the disputed accounts and yet he also failed to recall that they existed. I.C. 31–1–11.5–10(c) provides that "[t]he disposition of property settled by such an agreement [a PSA] and incorporated and merged into the decree shall not be subject to subsequent modification by the court except as the agreement itself may prescribe or the parties may subsequently consent." I.C. 31–1–11.5–17(b) provides that "[t]he orders as to property disposition entered under section 9 [final decrees] of this chapter may not be revoked or modified, except in case of fraud which ground shall be asserted within six (6) years after the order is entered." When considering these statutory provisions together, a clear message emerges from our legislature: The legislature intends finality for dissolution decrees as they relate to the disposition of property.

The PSA contains a provision stating that "[a] modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement...." (R. 28). This provision does nothing more than prescribe the method of formal modification once the agreement to

modify has been reached. Because the PSA at issue does not provide for modification and we have found no evidence of fraud, actual or constructive, the trial court correctly denied Ronald's motion to set aside the PSA.[2]

The trial court is affirmed in all respects.

NAJAM and ROBERTSON, JJ., concur.

2. Ronald further contends that the PSA was unconscionable. He argues that change of circumstance should support his petition. This issue contemplates the maintenance provision. As we previously stated, whether the trial court erred in dismissing Ronald's petition to modify the decree of dissolution as to the maintenance provision in the PSA is presently the issue in a separate appeal.