

FILED

Oct 27 2023, 9:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ralph E. Dowling
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Amy O. Carson
Jacob W. Zigenfus
Massillamany Jeter & Carson, LLP
Fishers, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

August Wohlt,

*Appellant-Respondent,*

v.

Christi Wohlt,

*Appellee-Petitioner.*

October 27, 2023

Court of Appeals Case No.
22A-DR-2685

Appeal from the Delaware Circuit
Court

The Honorable Marianne Vorhees,
Judge

Trial Court Cause No.
18C01-1507-DR-78

**Opinion by Judge Riley.**
Judges Crone and Mathias concur.

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Respondent, August Wohlt (Husband), appeals following the trial court's entry of judgment in favor of Appellee-Petitioner, Christi Wohlt (Wife), on claims relating to the property settlement agreement resulting from their divorce proceedings.

We affirm in part, reverse in part, and enter summary judgment for Husband.

## ISSUES

Husband presents this court with six issues, which we consolidate, restate, and address as the following two issues:

> (1) Whether Husband was entitled to summary judgment as a matter of law on the issue of whether certain cryptocurrencies were subject to division; and

> (2) Whether the trial court abused its discretion when it ordered Husband to pay expert witness and attorney's fees.

## FACTS AND PROCEDURAL HISTORY

On June 16, 2007, Husband and Wife married. Three children were born of the marriage. During the marriage, the couple owned and operated Echo Systems, Inc. (Echo), which was engaged in the business of mining and trading cryptocurrency. Wife was the Chief Financial Officer of Echo, and the company was owned in her name. During the marriage, Echo owned 6.21 units of Bitcoin and 1,000 units of Ethereum Classic (ETC).

On July 22, 2015, Wife filed a petition for dissolution. The parties exchanged information, but Wife did not conduct formal discovery during the dissolution proceedings. On June 1, 2016, the parties engaged in mediation, resulting in the Property Settlement Agreement (PSA). The PSA provided that the parties agreed to close Echo within thirty days and that "Husband shall retain all assets of the business, except for the following items: Wife's Mac computer and printer, iPhone, iPad and laptop." (Appellant's App. Vol. II, p. 59). The PSA did not specifically address the cryptocurrencies owned by Echo. At the time of the mediation, the Bitcoin and ETC units had a combined value of approximately $18,000. On June 6, 2016, the trial court issued a decree of dissolution approving the PSA and finding that "it was entered into fairly, without fraud, duress or undue influence and was fair and equitable." (Appellant's App. Vol. II, p. 73).

After the entry of the decree of dissolution, in July 2016, ETC was "forked" into two cryptocurrencies, ETC and Ethereum (ETH). (Exh. Vol. VII, p. 58). As part of the fork, owners of ETC were entitled to an equal number of units of the new currency, ETH. Therefore, in July 2016, Husband came into possession of 1,000 units of ETH. Shortly after the entry of the decree in 2016, Husband sold some of his Bitcoin holdings. In November 2017, Husband searched the Echo computer hardware and software he had acquired as part of the divorce proceedings and discovered records pertaining to the ownership of the cryptocurrencies, which led him to confirm that he was still in possession of

the ETC units. In December 2017, Husband alerted his counsel as to the existence of the cryptocurrencies.

[7] On October 30, 2018, Husband's counsel sent a letter to Wife's counsel providing notice that Husband had become aware of the existence of the Bitcoin and ETC cryptocurrencies. On May 14, 2020, Wife filed her Verified Motion to Address Asset Omitted from the Marital Estate and Child Support Matters. Wife alleged that Husband had "failed to disclose" the Bitcoin and the ETC. (Appellant's App. Vol. II, p. 80). Wife sought the division of those cryptocurrencies and an adjustment of Husband's child support obligation from 2017 forward. On August 18, 2020, Wife filed a request for relief pursuant to Indiana Trial Rule 60(B) in which she reiterated the allegations of her previous verified motion but in which she also acknowledged that Husband disputed whether the Bitcoin and ETC were subject to division.

[8] On October 2, 2020, the trial court held the first hearing in the instant litigation. Husband testified that during the parties' mediation and prior to the entry of the decree of dissolution, he had forgotten about the Bitcoin and ETC owned by Echo. Husband also testified regarding the forking of the ETH cryptocurrency from the ETC cryptocurrency. Wife testified that she was not aware of the Bitcoin and the ETC at the time of the parties' mediation because "[b]oth of us had forgotten about it." (Exh. Vol. VII, p. 40). The hearing was not completed, and the trial court took all matters under advisement so that the parties could submit briefing. Thereafter, the parties engaged in further discovery.

[9] On January 21, 2021, Husband filed his motion for partial summary judgment and designation of evidence on the issues of Wife's request to divide the cryptocurrencies, a request which now included the ETH units acquired by Husband as a result of the forking which occurred after the execution of the PSA, and her request to modify child support from 2017 forward. Regarding the cryptocurrencies, Husband argued, in relevant part, that he was unambiguously awarded those assets by the PSA and that, due to the PSA's disclosure provisions, Wife could not request that the cryptocurrencies, which both parties agreed had been forgotten, should be divided. As to the support modification, Husband argued that Wife was precluded by long-standing Indiana precedent from seeking a support modification for any time period prior to the filing of her petition for modification and that no exceptions to this general rule applied.

[10] On February 19, 2021, Wife filed her response in opposition to summary judgment, along with her designation of evidence. Wife argued that there were genuine issues of material fact regarding whether the trial court had the authority to divide the cryptocurrencies. Wife further argued that, because Husband had waited more than a year to disclose those assets to Wife upon their rediscovery by Husband and because Husband had made inconsistent statements about whether he still had the Echo-owned Bitcoin units in his possession, there were genuine issues of material fact regarding whether he had acted fraudulently.

[11]     On March 18, 2021, the trial court held a hearing on Husband's motion for partial summary judgment.[1]  On March 26, 2021, the trial court denied Husband's motion, ruling that the fact issues precluding summary judgment were "what did the parties know, and when did they know it?"  (Appellant's App. Vol. II, p. 29).  Regarding the issue of child support, the trial court found that it was "not seeing this as a retroactive support modification issue.  After a hearing, I may find this is a failure to disclose and a failure to share irregular income for the child's benefit, and [Wife] has a legal right in either law or equity to make a claim to her percentage share of the irregular income."  (Appellant's App. Vol. II, p. 29).

[12]     Fact-finding hearings were scheduled on March 3 and 4, 2022, on Wife's petition.  In advance of the March hearings, on February 23, 2022, Husband filed a motion to compel discovery pertaining to Wife's expert witness, Erik Min (Min), who would testify regarding cryptocurrency issues.  In conjunction with his motion to compel, Husband filed a motion to continue the matter and to set a *Daubert* hearing on the scientific reliability of Wife's expert evidence.  On February 28, 2022, the trial court denied Husband's motions.  The March hearings took place as scheduled, at which Min testified regarding the forking of the ETH from the ETC cryptocurrency and his verification of the information

---

[1] This hearing was not transcribed for appeal.

regarding the Bitcoin acquisition and sale. Min's report was also admitted into evidence.

[13] On April 1, 2022, the trial court entered its Order equally dividing the value of the cryptocurrencies, resulting in an award to Wife of $1,842 for the Bitcoin, $14,000 for the ETC, and $208,441.63 for the ETH, for a total of $224,283.63. On April 8, 2022, the trial court entered its Order denying Wife's request to increase Husband's support obligation retroactive to the filing of her petition on May 15, 2020, finding that it could not locate any authority for doing so. The trial court also adopted the parties' pre-hearing support modification agreement.

[14] On September 1, 2022, the trial court held a hearing to address Wife's motion for expert witness and attorney's fees. Husband incurred $50,011.60 in attorney's fees, and Wife incurred $51,636 in attorney's fees. Min requested $42,000 for his services. At the hearing, Wife requested that Husband pay a portion of her fees, but Husband did not make any similar request. On October 14, 2022, the trial court ordered Husband to pay Wife $15,042 in attorney's fees, which it calculated by applying the parties' income allocations for purposes of child support (Husband 64%/Wife 36%) to the total attorney's fees incurred by both parties. The trial court also ordered Husband to pay half of Min's fees, $21,000. In awarding the expert witness fees, the trial court found that Wife was not required to take Husband's word about the cryptocurrencies, that Wife was justified in hiring an expert, and that the trial court had found Min's report and testimony to be "very helpful." (Appellant's App. Vol. II, p. 48).

Husband now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

I. *Summary Judgment*

Husband contends that the trial court erred when it denied his motion for partial summary judgment on the issue of whether the Bitcoin, ETC, and ETH cryptocurrencies were subject to division. Summary judgment is appropriate if the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). We review the denial of summary judgment de novo and apply the same standard as the trial court. *Kerr v. City of South Bend*, 48 N.E.3d 348, 352 (Ind. Ct. App. 2015). The party moving for summary judgment bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Sargent v. State*, 27 N.E.3d 729, 731 (Ind. 2015). "Summary judgment is improper if the movant fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact." *Id.* at 731-32. "All disputed facts and doubts as to the existence of material facts must be resolved in favor of the non-moving party." *Kerr*, 48 N.E.3d at 352. If the facts are undisputed, we determine the law applicable to those facts, and whether the trial court correctly applied it. *King v. Ebrens*, 804 N.E.2d 821, 825 (Ind. Ct. App. 2004). A property settlement agreement which has been incorporated into a dissolution

decree becomes a binding contract which is interpreted according to the general rules of contract construction. *Bailey v. Mann*, 895 N.E.2d 1215, 1217 (Ind. 2008). The interpretation of a property settlement agreement is a matter of law which we review de novo. *Id.*

A. *PSA Interpretation*

[17] Husband asserts that he was entitled to summary judgment because the PSA unambiguously awarded him the cryptocurrencies. Wife counters that the PSA could not have awarded Husband those assets because the cryptocurrencies had been forgotten by the parties and, thus, it could not have been the parties' intention to divide those assets when executing the PSA.

[18] The Dissolution Statute provides that "orders concerning property disposition entered under this chapter . . . may not be revoked or modified, except in case of fraud." Ind. Code § 31-15-7-9.1(a); *see also Ryan v. Ryan*, 972 N.E.2d 359, 362 (Ind. 2012) (noting that the statutory proscription on the modification or revocation of property settlement agreements is unambiguous). However, a trial court may interpret and enforce a property settlement agreement, and when doing so, the general rules of contract construction apply. *Id.* at 364; *Fackler v. Powell*, 839 N.E.2d 165, 169 (Ind. 2005).

[19] Unless the terms of a property settlement agreement are ambiguous, we will give those terms their plain and ordinary meanings, we will consider those terms conclusive, and we will not resort to extrinsic evidence or construe the agreement. *Bailey*, 895 N.E.2d at 1217; *Harris v. Copas,* 165 N.E.3d 611, 619

(Ind. Ct. App. 2021). It is a well-settled principle of contract construction that terms are not ambiguous simply because a controversy exists between the parties as to their meaning. *Harris*, 165 N.E.3d at 619.

[20] Here, the PSA provided that "Husband shall retain *all assets of the business, except for the following items*: Wife's Mac computer and printer, iPhone, iPad and laptop." (Appellant's App. Vol. II, p. 59) (emphasis added). Wife did not identify any ambiguity in the wording of this provision in her initial petition seeking to divide the disputed assets, her Trial Rule 60 motion, in her response to Husband's summary judgment pleadings, or on appeal. The term "all" is generally used to refer to the totality of what is being designated and is not a term that is reasonably susceptible to more than one interpretation. *See Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/all (last visited October 12, 2022) (defining "all" as "the whole amount, quantity, or extent of" and "every member or individual component of"). We find that this provision of the PSA unambiguously means that every asset owned by Echo would be awarded to Husband, apart from the five specifically listed items awarded to Wife.

[21] We are aware that in *Dewbrew v. Dewbrew*, 849 N.E.2d 636, 646 (Ind. Ct. App. 2006), this court concluded that a property settlement agreement which purported to settle the rights of the parties to real and personal property then owned by them was ambiguous because it was silent as to "the most significant marital assets," namely, the marital residence and two businesses, which were acquired during the marriage. However, it cannot be said that the Bitcoin and

ETC, the cryptocurrencies which existed at the time of the signing of the PSA which were indisputably forgotten by both parties, were among their "most significant" marital assets for purposes of the PSA that otherwise disposed of the parties' marital residence, business, vehicles, investments, bank accounts, and personal property. *Id.* The fact that these assets, particularly the ETH currency, may have increased in value after the parties entered into the PSA does not inject ambiguity into the PSA itself. *Dewbrew* does not extend to the instant case for the additional reasons that the assets at issue in *Dewbrew* were specifically discussed by the parties prior to the entry of the settlement agreement, the wife in that case did not have her attorney review the finalized settlement agreement prior to signing it, and we remanded for recalculation of the division of the marital estate for other reasons apart from the omissions of the marital estate and the two businesses from the parties' settlement agreement. *Id.* None of those factors are at issue here.

[22] We also observe that as part of her attempts to have the cryptocurrencies divided, Wife filed a Trial Rule 60 motion seeking relief from judgment. Parties seeking such relief are allowed to raise claims of mutual mistake occurring at the time of the settlement agreement. *See Ryan*, 972 N.E.2d at 370-71 (observing that a Trial Rule 60 motions seeking relief from a property settlement agreement should be viewed as a contract claim and that "[i]f there is a mutual mistake, contract law provides the rules for resolving it"). However, a party may not assert mutual mistake as a basis for relief under Rule 60(B)(1) more than one year after the entry of the judgment, and the "reasonable time"

period for seeking relief under the catch-all provision of Rule 60(B)(8) specifically excludes claims of mistake. Ind. Trial Rule 60(B)(1), (8); *Dusenberry v. Dusenberry*, 625 N.E.2d 458, 462 (Ind. Ct. App. 1993). The decree of dissolution in this case was entered on June 6, 2016, and Wife filed her initial petition seeking to divide the disputed assets on May 14, 2020, which was more than one year after the entry of judgment. Therefore, a claim of mutual mistake was unavailable to Wife as a basis for disputing summary judgment. On appeal, Wife does not cite any legal authority pertaining to mutual mistake in her argument as to why summary judgment was inappropriate on this issue. In light of this lack of citation to authority, even if such a claim were available to her, she has waived it for our consideration. *See* Ind. Appellate Rule 46(A)(8)(a) (providing that appellate arguments must contain the party's contentions supported by cogent reasoning); *Martin v. Hunt*, 130 N.E.3d 135, 137 (Ind. Ct. App. 2019) (noting that the "[f]ailure to present a cogent argument results in waiver of the issue on appeal").

[23] Neither can we credit Wife's assertion that we should not consider Husband's appellate arguments on this issue because he took a contrary position in the trial court. "The premise of judicial estoppel is that, absent a good explanation, a party should not be permitted to gain an advantage by litigating on one theory and thereafter pursuing an incompatible theory in subsequent litigation." *ArcBest Corp. v. Wendel*, 192 N.E.3d 915, 928 (Ind. Ct. App. 2022). However, the doctrine only applies where the litigant has made intentional misrepresentations, so the litigant's bad-faith intent is dispositive of its

application.  *Id*.  In support of her claim that Husband is estopped from arguing that the PSA awarded him the cryptocurrencies, Wife cites Husband's testimony at the October 2, 2020, hearing in this matter prior to the summary judgment proceedings which included the following:

> Husband's Counsel:  Let's get down to the nitty gritty of what the Judge has to do in this case of cryptocurrency.  The Judge has to decide whether to give [Wife] anything, and if so, how much of it to give her.  What do you think is a fair resolution of the cryptocurrency issue for the [c]ourt to provide for you today?

> Husband:  What makes sense to me is that I get it between filing and mediation . . . If at all.  I don't fully understand the wording in our decree and there may be something in there that affects that, but I defer to the Judge's decision on that.

(Tr. Vol. VII, p. 51).  Later on cross-examination, Husband was asked if he felt that "an adjustment is warranted," to which he responded "Yeah.  I believe, at this time, the reasonable approach would be to settle on a value between the mediation and the divorce, the filing."  (Tr. Vol. VII, p. 62).  However, as early as her August 18, 2020, request for relief pursuant to Indiana Trial Rule 60(B), Wife acknowledged that Husband disputed whether the trial court had the authority under the PSA to divide the cryptocurrencies.  After a review of the parties' pleadings and the context of Husband's responses cited above, it is clear to us that Husband did not assent to divide the challenged assets with Wife or that he took a position contrary to that which he now argues on appeal.  Even if Husband had taken divergent positions, Wife does not even attempt to

demonstrate any bad-faith intent on Husband's part. Therefore, the doctrine does not apply. *See ArcBest Corp.,* 192 N.E.3d at 928.

[24] On appeal, Wife also asserts that the trial court properly denied summary judgment to Husband because the parties disagreed about whether the trial court had the authority to divide the cryptocurrencies and whether the PSA was ambiguous so as to require interpretation. These arguments are not persuasive, as both are predicated on the meaning of the PSA which is a question of law for the trial court. *See Bailey*, 895 N.E.2d at 1217.

[25] Because the PSA's terms are unambiguous, we must apply the plain terms of the agreement, and we cannot credit Wife's argument concerning what the parties might or might not have intended when entering into the PSA because that would entail looking beyond the four corners of the unambiguous contract. *See Niccum*, 734 N.E.2d at 639. There was no factual dispute that the Bitcoin and the ETC, from which the ETH forked, were assets owned by Echo. Therefore, we conclude that there was no genuine issue of material fact precluding summary judgment to Husband on this issue.

B. *Constructive Fraud*

[26] Wife alleged in her verified petition to divide the cryptocurrencies that Husband had failed to disclose those assets, and she clarified in her response to Husband's motion for summary judgment that she claimed Husband had committed constructive fraud by failing to disclose those assets prior to the parties entering into the PSA. In order to demonstrate constructive fraud, a

party must establish the following elements: (1) a duty owed by the party charged to the complaining party as a result of their relationship; (2) a violation of that duty through deceptive material misrepresentations of past or existing facts or through remaining silent where there was a duty to speak; (3) reliance by the complaining party; (4) injury to the complaining party; and (5) an advantage gained by the charged party to the detriment of the complaining party. *Ehle v. Ehle*, 737 N.E.2d 429, 434 (Ind. Ct. App. 2000). In *Selke v. Selke*, 600 N.E.2d 100, 101-02 (Ind. 1992), our supreme court held that, while a duty to disclose information regarding assets between dissolution litigants "may arise from unique factual circumstances including the express terms of a property settlement agreement, or from a request for discovery under the Indiana Trial Rules," there is no spontaneous duty of disclosure.

[27] The PSA contained the following relevant provisions:

> Section 5.12. <u>Fully Advised</u>. Each of the parties hereto has been fully, separately, and independently apprised and advised of their respective legal rights, remedies, privileges and obligations, arising out of the marriage relation or otherwise, by counsel of their own choice and selection, *and each has, in addition thereto, made such independent inquiry and investigation with respect to all of the same as they deemed necessary to be fully informed*. Each party acknowledges that he or she has consulted with and sought the advice of legal counsel and other professional persons, such as, but not limited to, accountants and other counselors, as he or she desires, and with or without the advice of such professionals, each party has made his or her own determination as to the valuation of all assets and liabilities. [].
>
> * * * *
>
> Section 5.20. <u>Disclosure</u>. Husband and Wife acknowledge that each party is entitled to thorough discovery, analysis and

investigation of the other party's financial information and all data and facts relevant to the dissolution proceeding. *Husband and Wife expressly waive that right for the purpose of this Agreement and hereby certify that they have full and adequate knowledge of all such relevant financial and other information, data and facts.* Each party represents to the other that they have relied on the full and complete disclosure of the other person upon entering into this Agreement.

(Appellant's App. Vol. II, pp. 70-72) (emphasis added). Taken together, these provisions did not impose any duty upon Husband to proactively search the Echo software and hardware and to disclose what he discovered there prior to entering into the PSA. Although formal discovery requests could have been propounded to Husband to discover the assets of Echo, in the PSA, Wife waived her right to formal discovery. Instead of conducting discovery, Wife agreed that she had made an independent inquiry and investigation of her legal rights and privileges which she deemed necessary to be fully informed, and Wife certified that she had complete knowledge of all relevant information prior to entering into the PSA. We find this waiver of discovery and certification of full knowledge to be significant to any claim of constructive fraud here. In *Voight v. Voight*, 645 N.E.2d 623, 626 (Ind. Ct. App. 1994), *trans. denied*, we found no constructive fraud in a wife's failure to disclose certain bank accounts she had forgotten about prior to entering into a property settlement agreement with her husband, where the husband "had access to information regarding each of the disputed accounts and yet he also failed to recall that they existed." Here, Wife could have had access to information about Echo's business assets, yet she waived that right according to the terms of the PSA she voluntarily

executed. In addition, while Husband and Wife warranted to each other that they relied on the "full and complete disclosure of the other person upon entering into" the PSA, warranting *reliance* on full disclosure is not warranting that such full and complete disclosure has actually been made to the other party. (Appellant's App. Vol. II, p. 72).

[28] In her response to Husband's motion for summary judgment, Wife relied on *Atkins v. Atkins*, 534 N.E.2d 760, 762-63 (Ind. Ct. App. 1989), *trans. denied*, in which this court found that the husband had committed constructive fraud by failing to disclose to the wife the fact that a certain stock owned in his name had doubled in value prior to the signing of the settlement agreement and the entry of the decree. *Atkins* is factually distinguishable for the principal reason that the settlement agreement in that case contained the provision that "Husband and Wife warrant and represent that the financial information and statements of Husband and the Wife supplied to Husband's and Wife's counsel as of diverse dates, past and present, have been true, accurate and complete as to any interest, direct, indirect or beneficial, that either may have," an express warranty of full disclosure not present in this case. *Id.* at 762. In her summary judgment response, Wife also contended that Husband's failure to disclose the existence of the cryptocurrencies for more than a year after their discovery, his inconsistent statements after this litigation had commenced about whether he still had the Bitcoin units in his possession, and his sale of the ETH for substantial gains all created issues of material fact regarding his fraudulent intent. However, all of these events occurred after the parties had entered into

the PSA and their divorce had been finalized and do not reflect circumstances bearing on his intent at the time of executing the PSA.

[29] In light of the express language of the PSA, we conclude that Husband was unambiguously awarded the cryptocurrencies at issue and that Husband owed Wife no duty to find and disclose the cryptocurrencies so as to support a claim of constructive fraud. Therefore, we reverse the denial of summary judgment and enter summary judgment in favor of Husband.[2]

II. *Expert Witness and Attorney's Fees*

[30] The trial court ordered Husband to pay $21,000 in expert witness fees and $15,042 of Wife's attorney's fees. Husband separately challenges the expert witness and attorney's fees associated with Min and the attorney's fees associated with the denial of Husband's motion for summary judgment on the issue of Wife's claim to retroactive child support. We address each of these issues in turn.

A. *Fees Associated with Min*

[31] Husband argues that Wife did not provide him with adequate pre-hearing discovery pertaining to Min, Min's opinions were not supported by the

---

[2] In light of our entry of summary judgment in favor of Husband on this issue, we do not address his claims that the trial court erred when it awarded Wife half of the value of the cryptocurrencies after trial as argued in his Issues II and III or his argument that the trial court abused its discretion in denying his motions to compel discovery and to continue the final hearing pertaining to the expert witness, Min, as presented in Issue V. Those issues are now moot. In his Issue IV, Husband acknowledges that he does not contest the merits of the trial court's denial of summary judgment on the issue of retroactive child support, as the trial court ultimately ruled in Husband's favor on that issue.

evidence, Min's opinions were rendered in an inefficient manner that resulted in unnecessary costs, and that Min's expertise was unnecessary because Min ultimately concluded that the information provided by Husband about the acquisition and sales of the cryptocurrencies was accurate. As a result, Husband contends that he should not have been ordered to pay half of Min's fee or "related attorney fees." (Appellant's Br. p. 61). For each issue presented to us, an appellant is required to provide a concise statement of the applicable standard of review. App. R. 46(A)(8)(b). An appellant is also required to support his argument with cogent reasoning, including citation to legal authority. App. R. 46(A)(8)(a). In contravention of the Indiana Appellate Rules, Husband has not provided us with a standard of review applicable to an award of expert witness fees, nor has he cited any statutes or caselaw in support of his challenge demonstrating that a trial court errs in awarding expert fees under these circumstances. Therefore, Husband has waived this claim, and we decline to address it. *Martin*, 130 N.E.3d at 137.

[32]     Husband's one-phrase argument that he should not have been ordered to pay any attorney's fees related to Min's expert testimony fails for the same reason. Although Husband cites a standard of review for a trial court's award of attorney's fees, he has provided us with no pertinent legal authority to support his challenge to those attorney's fees. Therefore, that claim is also waived*. See Halum v. Halum*, 492 N.E.2d 30, 31 n.1 (Ind. Ct. App. 1986) (declining to address wife's claim regarding the trial court's denial of attorney's fees, finding it waived for failure to present cogent argument), *trans. denied*.

[33] Husband further argues that, because of the purported deficiencies in Min's testimony and report, Husband should have been awarded attorney's fees for having to defend against this expert. Our review of the transcript of the September 1, 2022, hearing on expert witness and attorney's fees revealed that Husband did not request an award of attorney's fees on this basis. Because we cannot discern that Husband requested an award of attorney's fees for having to defend against Min's expert testimony, he has waived this claim as well. *See Wireman v. LaPorte Hosp., Co., LLC*, 205 N.E.3d 1041, 1046 n.2 (Ind. Ct. App. 2023) ("It is well settled that an appellant cannot present an argument for the first time on appeal[.]"), *trans. denied*.

B. *Denial of Summary Judgment on Retroactive Child Support*

[34] The trial court denied Husband's motion for summary judgment on Wife's claim to retroactive child support but ultimately ruled in Husband's favor on this issue. Husband claims that the trial court's "erroneous denial of the motion for summary judgment on this issue subjected [Husband] to paying substantial amounts of attorney fees to litigate the issue that should have been resolved on March 26, 2021, not April 8, 2022" and that he should have been awarded attorney's fees for "needless litigation." (Appellant's Br. p. 52). However, the record does not reveal that Husband requested attorney's fees on this basis, and, therefore, we find that his has also waived this claim. *Wireman*, 205 N.E.3d at 1046 n.2.

Inasmuch as Husband asserts that the trial court's order that he pay a portion of Wife's attorney's fees was unreasonable in light of the litigation on this issue, his argument is unpersuasive. The trial court entered findings and conclusions on attorney's fees in which the trial court apportioned the parties' combined attorney's fees based upon their relative incomes. Pursuant to Indiana Code section 31-16-11-1 and within its broad discretion in awarding attorney's fees, a trial court may take into consideration the financial resources of the parties. *Redd v. Redd*, 901 N.E.2d 545, 554 (Ind. Ct. App. 2009). Husband does not address his argument to the trial court's findings and conclusions regarding the award of attorney's fees, and, therefore, he has failed to demonstrate that the trial court abused its discretion.

## CONCLUSION

Based on the foregoing, we hold that Husband was entitled to summary judgment as a matter of law on the issue of whether the cryptocurrencies were subject to division. We further hold that Husband waived the majority of his claims regarding the trial court's award of expert witness and attorney's fees and that he has failed to demonstrate the merit of any preserved claims.

Affirmed in part, reversed in part, and summary judgment entered for Husband.

Crone, J. and Mathias, J. concur